## THE WESTMINSTER WATER CO. *vs.* THE MAYOR AND COMMON COUNCIL OF WESTMINSTER.

*Municipal Corporations—Contract Between a Water Company and a Municipality for Supply of Water—Agreement to Levy a Certain Tax Forever for the Water Company Ultra Vires—Ordinance Divesting City Authorities of Future Control Over Legislative Matter Unreasonable—Impairing Obligation of Contract.*

A municipality has no authority, in the absence of express legislative sanction, to bind itself to levy a certain annnual tax in perpetuity for the use of a Water Company which agrees to supply the city with water.

The Act of 1876, ch. 88, authorized the Mayor and Common Council of Westminster to levy annually a tax not exceeding five cents on every $100 and out of the proceeds to pay such sum as may be deemed proper to a Water Company which should agree to introduce water into the city, the amount to be paid not to exceed the proceeds of said levy. In 1883 a municipal ordinance was passed directing the levy to be made and the payment thereof to the Westminster Water Co. when that company's mains, etc., should be laid and water supplied, the amount to be paid in any one year not to be lower than that produced by the assessment of the year 1883. In reliance upon this ordinance the Water Co. supplied the city with water, and in 1885 a supplemental agreement between the company and the city provided that the contract for the supply of water should bind the parties and their successors in office forever. The tax was levied and paid to the company until 1902 when the city passed an ordinance repealing that of 1883 and declaring the contract terminated. The company then asked for a *mandamus* commanding the city to make said levy for its use. *Held*, that the municipality had no authority to bind itself to levy the tax for the Water Company for all time to come ; that therefore the contract to do so was *ultra vires* and void, and consequently the Water Company is not entitled to a *mandamus*.

*Held*, further, that the contract will not be construed as one made to con-

.tinue for forty years only merely because that period was the limit of the corporate life of the Water Company, since the parties themselves expressly declared that the contract should continue forever and the charter of the company was indefinitely extended by the Act of 1900, ch. 489.

*Held*, further, that the contract is unreasonable because it deprives subsequent municipal authorities of their legislative power. The contract calls for the perpetual annual levy of five cents on the assessable basis and that basis may be largely augmented so that the Water Co. may receive a much greater sum than in 1883, or if the basis should decrease a higher rate of taxation would have to be imposed for the benefit of the company; and it was not the purpose of the Act of 1876 to permit the city, by contracting to levy five cents always, to deprive subsequent city authorities of the power to levy less than that rate if such levy would yield a sum sufficient to pay the amount agreed upon.

Under said Act of 1876 the city had no power to bind itself to levy for the Water Company more than five cents on the taxable basis. The ordinance of 1883 and the contract provided that the net amount to be paid to the company should not be less than that produced by the then existing assessment. If the taxable basis should decrease, the contract required the city to levy more than five cents, which it was not authorized to do, and consequently this obligation is also *ultra vires*.

The *ultra vires* contract of a municipal corporation is not within the provision of the Federal Constitution forbidding the impairment of contracts, because where no valid contract exists there can be no impairment of its obligation.

Appeal from the Circuit Court for Carroll County (JONES, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Bernard Carter* and *Charles E. Fink* (with whom were *Roberts & Crouse* on the brief), for the appellant.

*Jas. A. C. Bond* and *Francis Neal Parke* (with whom were *John K. Cowen* and *John M. Reifsnider* on the brief), for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Carroll County and was taken from an order refusing to grant a writ of *man-*

*damus,* which had been asked for by the appellant against the appellee. The facts which are necessary to be stated are as follows. By ch. 88 of the Acts of the General Assembly of 1876, it was provided that the Mayor and Common Council of Westminster may levy annually a tax not exceeding five cents on every $100 to be used and applied to the payment of water rents for the use of water for the public uses of said city, that is to say; for use on the public streets of said city and for the suppression of fires, to any incorporate company which may be organized for the introduction of a supply of water into said city; and the said Mayor and Common Council may contract with any such incorporated or to be incorporated company for the introduction of water into the said city, to pay such company annually in such sum not exceeding the proceeds of said levy of five cents as aforesaid, as the said Mayor and Common Council may deem proper, provided that no such payment shall be made until water shall have been actually introduced into said city by such company; and provided further that said levy of five cents, as aforesaid, shall not be made or used and applied for any other purposes whatsoever. On May 12th, 1883, the Mayor and Council of Westminster passed an ordinance known as No. 62, wherein, amongst other things, it was provided that when mains of the size and length described in the ordinance shall be laid through the streets and alleys of the city of Westminster with water therein suitable and sufficient for fire extinguishing, street sprinkling and domestic purposes, by the Westminster Water Company, a body corporate of Carroll County, then and in that event the Mayor and Common Council of Westminster shall annually levy and pay to the said Water Company the sum of five cents on each $100 of the assessed value of all property within the limits of the said city subject to the levy and taxation by said city whatever the sum may be, less one-third of the expenses of collecting said water taxes each year. Provided that the amount of the said tax to be paid said company in any one year shall not be lower than that produced by the valuation or assessment of the year 1883. On the

faith of the aforegoing and other terms of the ordinance, all of which were accepted by the Water Company, the latter expended large sums of money in erecting a plant, building reservoirs, laying mains, and erecting fire plugs in accordance with the provisions of the ordinance just named. The ordinance thus became the contract between the company and the city. On June 29th, 1885, a supplemental agreement was entered into between the Water Company and the Mayor and Common Council of Westminster whereby some of the provisions of the contract made by Ordinance 62 were modified, but the terms of that supplemental agreement need not be stated further than the one we shall now quote, namely, "Now, therefore, for the purpose of rendering said ordinance clearer and to avoid any future misunderstanding concerning it, this agreement is now entered into by the said contracting parties *to bind them and their successors in office forever*, as follows." There are further provisions which we have said it was unnecessary to quote in this opinion. The tax was levied annually and paid to the Water Company under the provisions of Ordinance 62 and the supplemental agreement just alluded to, until the year 1902, when the Mayor and Common Council passed an Ordinance No. 145, repealing Ordinance No. 62, and declaring that the contract in said ordinance with the Westminster Water Company is hereby repealed and terminated and in making the levy for the year 1902, the Mayor and Common Council omitted to levy for the use of the Westminster Water Company the sum of five cents on each $100 of the assessed value of the property within the limits of the city as previously levied under the Ordinance No. 62 and the supplemental agreement referred to. Thereupon the pending petition for a *mandamus* requiring the Mayor and Council of Westminster to make the levy of five cents for the use of the Westminster Water Company was filed. Upon the coming in of the answer an agreed statement of facts was entered into and the case was heard. The application was denied upon the ground that the writ of *mandamus* could not be applied as an appropriate remedy for such wrongs as are alleged in the pe-

tition of the relator.    The appeal now before us brings up that order for review.

It ought to be stated, though not as tending to influence the decision of this case, that the Act of 1876 which gave the city of Westminster authority to contract for a supply of water for the purposes heretofore named, was repealed by the Act of 1882, ch. 295, but the repealing Act failed to take effect by reason of an omission to hold an election upon the result of which its becoming operative depended.    But the Local Code of 1888, Art. 7, secs. 238 to 247, incorporated the provisions of the Act of 1882 and omitted the Act of 1876.    The result is that the Act of 1876 is no longer in force.    By the Local Code a totally different system for levying the water tax and contracting with a Water Company is provided.    A specific sum not exceeding eighteen hundred dollars is required to be levied annually and under certain conditions a portion of that sum must be paid back by the Water Company to the City.

It has been more than once held by this Court, following the English doctrine, that the writ of *mandamus* is not one which is granted *ex debito justitiæ.    State* v. *Latrobe*, 81 Md. 222.    There must be a clear and unequivocal legal right to be enforced and there must not be any adequate remedy other than *mandamus* for its enforcement.    *Brown* v. *Bragunier*, 79 Md. 234.    If the right be doubtful, *mandamus* will not lie.    If the right be clear and there be some other adequate remedy, that remedy and not *mandamus* must be invoked.    Obviously then the inquiry at the threshold of the case is: Is the right which the Water Company sets up and seeks to have enforced such a clear legal and unequivocal right as can be enforced by this process.

Under the supplemental agreement it will be borne in mind that the contract of 1883 distinctly and unequivocally purports to bind both the municipality and the Water Company *forever*.    The municipality is obligated to levy each year in perpetuity five cents on the $100 of the assessed value of the property within the city and to pay the proceeds of the levy

to the Water Company in consideration for the latter's sup-
plying from its works, water for public use.   There are two
difficulties in the path of the enforcement of that contract by
*mandamus.   First*, it has been, as it must be, conceded, that
no municipality, without express legislative sanction, has au-
thority to bind itself to levy taxes for the payment of money
for all time to come when the taxes, if thus levied, are to be
applied as are those we are dealing with.   *Secondly*, the in-
equality and the want of mutuality in the provision which,
without regard to varying circumstances that might arise in the
future, fixes five cents as the rate to be levied each year, would,
of itself, stamp the contract as one not creating such a clear
and unequivocal legal right in the relator as to warrant the
issuing of a *mandamus* for its enforcement.

*First:* Starting with the postulate that without previous leg-
islative sanction a contract of the kind we are considering can-
not be made in perpetuity because it would be *ultra vires;* it
is argued that the true interpretation of the agreement is, not
that it was to continue or was designed to continue forever,
but that it was meant to last for 40 years and no longer, be-
cause that period was the limit of the corporate life of the
Water Company; and it was vigorously and ably insisted that
a contract of this character for 40 years, made under the cir-
cumstances we have narrated, was neither illegal nor unrea-
sonable.   Now, it is true the books are full of cases where
contracts for the furnishing of water by Water Companies to
municipalities and running for quite a number of years, have
been before the Courts repeatedly for consideration.   Thus,
in the case of *New Orleans Water Works Company* v. *Rivers*,
115 U. S. 674, a contract for 50 years was sustained ; in *Walla
Walla* v. *Walla Walla Company*, 172 U. S. 9, a contract for
25 years was sustained; in *Vicksburg Water Company* v. *Vicks-
burg*, 185 U. S. 65, a contract for 30 years was held not un-
reasonable, and in *Bennett Water Company* v. *Millvalle*, 50 Atl.
Rep. 55, a contract for twenty years was upheld.   *Columbus
Water Company* v. *Columbus*, 15 L. R. A. 354.   But it will
be noticed that in all of these and similar cases which might

be cited, there was a specific claim that a definite period of time had been distinctly agreed upon; and the question in some though not in all, was whether that definite period was a reasonable one.

Take for illustration *N. O. Water Works Co.* v. *Rivers, supra.* The contract there before the Supreme Court was one made between the State of Louisiana and the Water Works Company and was embodied in an Act of the Legislature. By the Act it was provided that the Water Company shall have for fifty years from the passage of the Act "the exclusive privilege of supplying the city of New Orleans and its inhabitants with water from the Mississippi river, &c." In spite of this the City Council of New Orleans granted to Robert E. Revers the privilege to lay a water pipe from the Mississippi river to the Saint Charles Hotel for the purpose of supplying the hotel with water. The Supreme Court upheld the validity of the contract between the State and the Water Company and struck down the ordinance because it impaired the obligation of that contract. The case of *Walla Walla* v. *Walla Walla Water Co., supra*, was this: The Act of the Territory of Washington by which the city of Walla Walla was incorporated declared that the city should have power to provide a sufficient supply of water and to grant to any persons or associations the right to use the streets of the city for laying pipes to supply the inhabitants with water, but the grant was not to be for a longer period than twenty-five years. There was a proviso which enacted "that none of the rights or privileges herein granted shall be exclusive, nor prevent the council granting the same rights to others." Pursuant to this authority the city passed an ordinance granting to the Water Company the right to lay mains, introduce water and furnish it to the city and its inhabitants for a period of twenty-five years, and the city stipulated that it would not erect, maintain or become interested in any water works during the time for which the rights were granted to the Water Company. The ordinance was accepted by the company and the water was introduced. Six years afterwards the city passed another ordinance to pro-

vide for the construction by the city of a system of water
works. Thereupon the Water Company filed a bill against
the city to restrain the latter by injunction from erecting water
works of its own. The injunction was made perpetual and the
case was then taken to the Supreme Court. In the course of its
judgment that tribunal, speaking through MR. JUSTICE BROWN,
said: "As the contract in question was expressly limited to
twenty-five years, and as no attempt was made to grant an
exclusive privilege to the Water Company, the city seems to
have acted within the strictest limitation of the charter. *Atlan-
tic City Water Works* v. *Atlantic City*, 48 N. J. L. 378.

"Had the privilege granted been an exclusive one, the con-
tract might be considered objectionable upon the ground that
it created a monopoly without an express sanction of the
Legislature to that effect. * * * , Without expressing an
opinion upon the point involved in that case (the case of *City
of Brenham* v. *Brenham Water Co.*, 67 Tex. 542), we are con-
tent to say that an ordinance granting a right to a water com-
pany, for twenty-five years, to lay and maintain water pipes
for the purpose of furnishing the inhabitants of a city with
water, does not, in our opinion, create a monopoly or prevent
the granting of a similar franchise to another company." The
decree making the injunction against the city perpetual was
affirmed by the Supreme Court.

In *Bennett Water Co.* v. *Millvalle*, 50 Atl. R. 155, a similar
situation was presented though the form of procedure was not
by bill in equity but by an action at law for the violation of a
twenty-year contract made by the borough of Millvale with
the Water Company.

In *Columbus Water Company* v. *Mayor, &c., Columbus*, 48
Kan. 99, a very elaborate opinion was filed and a large num-
ber of cases were examined and cited. The result reached
may be summarized in this way: A city of the second class
has the power to enter into a contract with private parties, or
a corporation, for water to be furnished to it for fire protec-
tion by such party or corporation; and when a city of the
second class has entered into such a contract, and a water works

plant has been erected and maintained at great expense for a period of four years or more, and during that period the corporation owning the plant has furnished water, in accordance with a contract entered into and recognized by the city, and the city has levied the proper tax and paid the hydrant rental for three years, and otherwise recognized the validity of such contract, *held*, that the Court will not hold the contract void, under the facts as stated in the petition, because the city did not possess the power to make a contract for the period of twenty-one years.  While the city may be powerless to make a contract for the duration alleged, still the contract should be upheld for a reasonable time when the circumstances and condition of the city as to population and assessed valuation are substanially the same, and no better facilities are offered upon more reasonable terms.

In none of the aforegoing cases was the situation presented with which we are confronted here.  The nearest approach to the case at bar is the one last above cited.  If this contract had been for 40 years then the single question to be considered would be whether that was a reasonable time, but the contract on its face purports to run forever and the argument is that inasmuch as the duration of the Water Company's charter was limited to 40 years, when the agreement was entered into, the contract, though professing to run forever, must be read as if it ran for 40 years and no longer; and then reading it in that way we are asked to say that the 40 years would not be unreasonable.  But the fallacy of the argument lies in this, that we must prescind from the contract the words that the parties to it have themselves deliberately incorporated therein, and we must then substitute for the words thus eliminated others that the contracting parties did not see fit to use and obviously did not intend to use.  That is to say, we must declare that the contract as made is one that is void because the parties were without power to enter into it, but inasmuch as it is void on that ground the Court will by construction make a new one for them, though they did not see fit or intend to make it for themselves; so that when made by the

Court the new contract would be one that is valid, because when thus made, it would run only for a reasonable time. By what authority can the Court limit the duration of the contract to a term of forty years, when it was the declared intention of the parties to it that it should continue in force *forever*, as stated in and declared by the supplemental agreement, which was framed for the very purpose of making clear their object in this particular? Why say forty years, now that the charter of the Water Company has been indefinitely extended by the *Act of 1900, ch. 489*, and obviously so extended to the end that the design of the contracting parties that the contract should remain operative for all time, might be given effect? The extension of the charter of the Water Company is a circumstance not to be overlooked in determining what the parties understood to be the meaning of the original contract as to the period of time the agreement was to run. No case has been cited where the Court has changed an *ultra vires* agreement into a valid undertaking, and we are not prepared to say that a Court upon an application for a *mandamus* is at liberty first, to declare void a contract under which the right to have a *mandamus* is asserted, and, secondly, in place of the void contract, to construct a valid one, in order that the writ may be issued. Until this can be legally done the application as here presented must fail.

Much reliance was placed by the appellant on the New Jersey cases. The first of these is the *Atlantic City Water Works Company* v. *Atlantic City*, 48 N. J. L. 378. That was an action of covenant by the Water Company against the city to recover the rent stipulated to be paid by the city. The city objected that the contract under which the rent was payable was void because it was a contract in perpetuity. It was held that the contract was not indefinite in duration because it contained a clause permitting the city to terminate it whenever so minded by purchasing the Water Company's plant. The next case was *Read* v. *Atlantic City*, 49 N. J. L. 559. That was a proceeding by *certiorari* to have the ordinance declared void. One of the grounds of invalidity as alleged was that

the ordinance was *ultra vires* because it continued in force for more than one year.   This contention was overruled on the authority of the previous case.   The third case was *Atlantic City Water Works Company* v. *Read*, 50 N. J. L. 665.   That was on error to the Supreme Court of New Jersey and the ordinances of October and November 1880, and the contract of the last-named month were finally declared invalid.   We do not perceive how either of these cases at all conflicts with the views we have thus far expressed.   The situation here involved is quite different from that which existed in those cases.   We think, therefore, we need discuss them no further.

*Secondly*, the contract calls for the levy of five cents on the assessable basis as that basis existed in 1883.   Now it requires no great stretch of imagination to see that though the town may not expand geographically, and therefore though no additional water mains or fire plugs may be required, yet the taxable basis may be largely augmented whereby the sum total of the five-cent levy would be increased two fold.   So that without the expenditure of a single additional dollar by the Water Company for supplying more mains, or plugs, it would, under the contract receive twice as much money as originally contemplated.   And so the opposite view may be taken.   The taxable basis may greatly diminish from various causes and yet the net amount produced by the rate of five cents on the basis as it existed in 1883 must be forever paid, whereby, in point of fact, a higher rate on the decreased basis would have to be levied.   Obviously these situations are not within the contemplation of the Act of 1876 which permitted the Mayor and Common Council to make the contract with the Water Company, and yet both might occur if the contract is valid and binding.

But again, both as bearing on the question of *ultra vires* and the unreasonableness of the contract, it should be noted that the Act of 1876 authorized the city of Westminster to levy annually a tax not exceeding five cents on the hundred dollars of assessed property *and out of the proceeds* to pay the Water Company such *sum* as the Mayor and Common Council may

deem proper. Under the Act, the city could have agreed to pay a certain, definite sum per·annum, or a sliding scale could have been arranged to meet unforeseen contingencies ; but in no event could the amount exceed the sum which a five-cent levy would produce ; but definiteness in the sum or a standard by which definiteness could be ascertained was clearly contemplated. We have said that events might happen which would cause a five-cent rate to yield too much and it was evidently not the purpose of the Legislature to permit the city by contracting to levy five cents absolutely and in all circumstances, to put it out of the power of future city authorities to levy less than that rate if less than that rate would yield a sum sufficient to liquidate the amount which the city might stipulate to pay. By Ordinance 62 all discretion is taken away from the municipality, and those who hereafter come into office will find their hands completely tied, though they may be fully conscious that the sum realized by a five-cent levy is grossly excessive and burdensome. In *Gale* v. *Kalamazoo*, 23 Mich. 344, JUDGE COOLEY used this emphatic and apposite language: "It is impossible to predicate reasonableness of any contract by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting in the proper way the emergencies that may arise. Those powers are conferred in order to be exercised again and again, as may be found needful or politic ; and those who hold them in trust today are vested with no discretion to circumscribe their limits or diminish their efficiency, but must transmit them unimpaired to their successors. This is one of the fundamental maxims of government, and it is impossible that free government, with restrictions for the protection of individual or municipal rights, could long exist without its recognition." It is difficult to perceive how Ordinance No. 62 can stand unless the fundamental maxim of which JUDGE COOLEY spoke, be wholly disregarded. There is a distinction which must not be overlooked. If by the ordinance the city had contracted for a fixed period to pay a certain sum annually or had provided a standard by which some definite sum could have been ascertained there

would have been no difficulty, because the legislative power of the city to levy a sufficient sum within the five-cent rate would not have been interfered with.   Now, however, the legislative power, if Ordinance 62 is valid, has been completely parted with and no subsequent Common Council can exercise any discretion in reference to it, even though it is obvious that a five-cent levy is excessive.   A contract to pay a definite sum for a specified period is binding on the successors of the municipal officials who made the contract.   Such a *contract* is not entered into in virtue of the governmental or legislative functions of the city, (*Ill. Trust and Sav. Bk.* v. *Arkansas City,* 76 Fed. Rep. 241); whereas the power to levy a tax belongs to the class of legislative and governmental powers.   In the one case successors may be bound, in the other they cannot be.   The provision of Ordinance 62 requiring five cents to be levied forever is an attempt to bind succeeding Common Councils in the discharge of their legislative and governmental powers.

But where did the city get authority to enact that in no event should the sum to be paid the company ever be less than that produced by the five-cent rate on the basis of 1883?   The words of the ordinance are as follows:   "Provided that the net amount of said tax to be paid said company in any one year shall not be lower than that produced by the present valuation of assessment?"   By "the present valuation of assessment" is meant the valuation for the year 1883.   Now, if from any cause the basis as it existed in 1883 should materialy depreciate, it is obvious that a levy of more than five cents on each one hundred dollars would be necessary in order to produce a net amount equal to the amount which the five-cent rate would yield on the basis of 1883.   But the city has no power to bind itself to levy more than five cents.   Consequently the contract which imposed the obligation contained in the proviso, was manifestly *ultra vires.*   Yet the relief sought is the enforcement of the entire contract with this *ultra vires* feature included.   For both of the reasons we have suggested, we are of opinion that the Court below was clearly

right in refusing the *mandamus.* There are many other cases that were relied on in the argument that we have not deemed it necessary to specially allude to.

*Finally:* It is insisted that the Water Company's rights are protected by the contract clause of the Federal Constitution. Before, however, that clause can be invoked there must be a contract and some act by the State or by its creature, a municipal corporation, by which the obligation of that contract is impaired. If there is no contract there can be no impairment of the obligation of a contract. An *ultra vires* contract is no contract at all. It is obvious, therefore, inasmuch as the contract relied on by the Water Company is invalid, because *ultra vires*, the prohibitive clause of the Federal Constitution cannot be invoked.

In view of the nature of the writ of *mandamus*, and in view of the *ultra vires* and unreasonable character of the contract which the Water Company seeks to enforce, we are obliged to affirm the order appealed from.

*Order affirmed with costs.*

(Decided January 20th, 1904.)