HORMES *v.* BALTIMORE COUNTY ET AL.

[No. 339, September Term, 1960.]

*Decided May 16, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Cullen H. Hormes, pro se,* for the appellant.

*Walter R. Haile, Deputy County Solicitor,* with whom was *Johnson Bowie, County Solicitor,* on the brief, for Baltimore County, one of the appellees.

*W. Lee Harrison,* with whom were *Michael Paul Smith* and *Richard C. Murray* on the brief, for Valley Green, Inc., the other appellee.

MARBURY, J., delivered the opinion of the Court.

This is an appeal from the decree of the chancellor which sustained demurrers to the appellant's bill of complaint without leave to amend.

The bill challenged the validity of a lease between the appellee Valley Green, Inc. (hereinafter referred to as Valley) as lessor, and the appellee, Baltimore County, Maryland, as lessee. The appellee County had filed an answer to the bill which raised affirmative defenses and it was agreed below that the issues of law raised by that answer would be decided as if raised by demurrer, together with the demurrer which had been filed by Valley.

The opinion of the chancellor sustained the demurrers and directed that the bill be dismissed "unless the complainant desires to amend". A decree, suitable in form to all parties, was duly entered which dismissed the bill, the chancellor reciting the fact that the appellant did not desire "to amend the bill of complaint herein".

The facts properly pleaded in the bill, and which are taken as admitted for the purposes of the demurrers, are substantially as follows: that the appellant is a citizen, taxpayer, and

resident of Baltimore County and sues in his own behalf and on behalf of others similarly interested; that on July 8, 1960, the Baltimore County Executive executed a lease agreement with Valley which provided for the leasing to Baltimore County of the entire second floor of a building to be constructed and to be known as "The Jefferson Building", to be located at Chesapeake Avenue and Courtland Street, Towson, Maryland, for the annual rental of $54,871.20, payable in equal monthly installments commencing June 1, 1961 and terminating on May 31, 1976, with the privilege of renewal for an additional period of ten years upon the same terms and conditions; that the County Council of Baltimore County has neither expressly nor impliedly authorized the said lease, nor authorized the said County Executive to negotiate and execute the same, nor has it determined that "the acquisition of the lease heretofore referred to is necessary and desirable for public purposes"; that the County Council has not made provision for the acquisition and payment of funds for the rent, and that the Director of Finance has not certified that funds were available for that purpose "as required by § 715 of the Baltimore County Charter". The bill concludes with the statement that the County had acquired certain other property in the Towson area, plans to construct, at some future time, additional office buildings thereon, and that the term of said lease is unreasonable.

The bill prays that an order be passed permanently enjoining the County from making any payments at any time to Valley under the lease, and for further relief.

There seems to be some dispute as to whether funds for payment of the rental under the lease were certified by the Director of Finance. On this point the record is not clear. However, for purposes of this opinion, we will assume that no funds were certified.

This case is unusual in that it purports to be a "taxpayer's suit" while there is no allegation of any wasting or misuse of public funds, nor suggestion of any fraud or impropriety in connection with the lease which is attacked. Furthermore, there is no contention by the County Council itself that it

should have been the party to either specifically determine the desirability of the leasing for public purposes or to negotiate its terms. The appellant does not specifically claim that the lease is void, but infers as much when it seeks to enjoin the payment of any rent thereunder.

The appellant on this appeal presents three questions:

I. Did the County Executive of Baltimore County have the authority to legally obligate and bind Baltimore County to the Jefferson Building lease?

II. Assuming that the County Executive had authority to negotiate and execute the Jefferson lease, was the failure of the Baltimore County Executive to obtain certification from the Director of Finance that the funds for such purposes were available fatal to the validity of the lease?

III. Is the Jefferson lease void because its term is for an unreasonable period?

## I

In order to answer the first and principal question it is necessary to consider the respective functions, duties, and powers of the County Executive and the County Council.

The Home Rule Charter of Baltimore County was adopted by its voters in November 1956. It is abundantly clear that a system of government based on the traditional "separation of powers" was intended.

In keeping with this principle Article IV of the Charter created "The Executive Branch to be headed by the County Executive as 'the chief executive officer of the County' and the official head of the County Government." He is given various duties of an executive or administrative nature including in § 402 (d):

"1. To supervise, direct and control, subject to law and the provisions of this Charter, the administrative services of the county;

\* \* \*

"12. To sign on the county's behalf all deeds, con-

tracts and other instruments which prior to the adoption of this Charter required the signature of the president or any member of the board of county commissioners, and to affix the county seal thereto;"

It is clear that the County Executive and the County Administrative Officer are the directing heads of the general administration of County affairs and have the duty, power and obligation to carry on the day to day business of the County.

Carrying out this principle of "separation of powers", Article III of the Charter is entitled "The Legislative Branch" and § 306 thereunder states that: "The County Council shall be the elected legislative body of the county and is vested with all the law making power thereof * * *. The County Council may enact public local laws for the county * * *".

To make it even more certain that the two branches of the government would operate separate and apart § 310 of the Charter prohibits interference by the Council, or any of its members, with "any officer, agent or employee in the executive branch of the County government other than the County Executive. * * * nor shall they in any manner attempt to influence or coerce any such officer, agent or employee in the performance of his duties." Thus the Charter has established a system of county government in which the executive branch and the legislative branch are separate and distinct, with neither having control over the other.

It, therefore, becomes necessary to decide which branch of government has the power to acquire property for County purposes by purchase or lease. Since the County Executive has the duty to supervise, direct and control the administrative services of the County, he must of necessity acquire appropriate office space and such other facilities as may be necessary from time to time to properly conduct the County's business. (It was developed in the oral argument that the space involved in the Jefferson Building was for the accommodation of the County Health Department.) It seems obvious, and we so hold, that this is an executive rather than a legislative function.

By Article I, § 2-1 of the Baltimore County Code (1958

Ed.) the County is "authorized and empowered to acquire by purchase, gift, devise, or condemnation any real or leasehold property needed for any public purpose * * *." It could scarcely be reasonably contended that the acquisition of property for public use is a legislative function, and the appellant does not so contend. The appellant's position is that the County Executive was without power to negotiate and execute this lease until authorized to do so by an enabling act of the County Council. The answer to this contention is that the powers of the County Executive in this respect are granted in general terms by the Charter and Baltimore County Code.

So far as the execution of the lease is concerned the County Executive is specifically granted that power by Article IV, § 12 of the Charter, previously referred to. The appellant argues, and we agree, that this is purely a ministerial function and that this section alone does not authorize the County Executive to negotiate and legally bind the County to the terms of the lease. But, in addition, § 2-1 of the Baltimore County Code authorizes the County to acquire real or leasehold property for any public purpose, so that we hold that this gives the County Executive the power to negotiate leases and to bind the County thereto without the necessity of any previous authorization or approval by the Council because the acquisition of office space by means of a lease is an executive and not a legislative function. We further hold that the decision as to whether property is needed for a public purpose is one to be made by the Executive and that this also is an executive rather than a legislative function.

Examination of the Charter and Public Local Laws discloses nothing to suggest that the Council is required to authorize or approve leases of the type here in question, or any other contract into which the County may enter.

The leading authority, 2 McQuillin, *Municipal Corporations,* (3d ed.) § 10.06, gives a simple, comprehensive test for determining whether a particular matter is a legislative or executive function:

> "* * * If it can be shown that the particular act could not be done without a law or ordinance, such

act is considered as legislative. The crucial test for determining what is legislative and what is administrative has been said to be whether the ordinance is one making a new law or one executing a law in existence."

Applying this test and the provisions of the Charter and Public Local Laws, we conclude that the County Executive in negotiating, executing, and binding the County to this lease, was executing authority granted by laws already in existence, so that his action was of an executive rather than a legislative character.

## II

Appellant's next contention is that the County Executive failed to obtain certification from the Director of Finance that funds were available to provide for the payment of rental under the lease as provided in § 715 of the Charter, and that such failure was fatal to the validity of the lease. § 715 provides that no contract shall be made by any County official "unless the Director of Finance shall first certify the funds for the designated purpose are available." As previously mentioned the record is not clear whether such certification was or was not made, nevertheless we will assume for present purposes that none was. However, the absence of such certification is of no consequence for the reason that the last sentence of this section reads as follows: "Nothing in this section or elsewhere in this Charter contained shall prevent the making of contracts of lease or for services providing for the payment of funds at a time beyond the fiscal year in which such contracts are made, provided the nature of such transactions reasonably requires the making of such contracts." This last provision of the section excludes a lease for a term of years where the rental is to be paid, as in this case, beyond the fiscal year in which the lease is made, so that no certification was required.

## III

The appellant's final contention is that the fifteen-year lease is for an unreasonable period and thus void. He relies upon

the case of *Westminster Water Co. v. Westminster,* 98 Md. 551, 56 Atl. 990. In that case the lease provided that a water company would supply the Town of Westminster with water in perpetuity. It was held to be for an unreasonable period, and thus void, because it had the effect of denying subsequent elected officials the right to make other arrangements they might want to make in regard to the water supply, and this right was denied forever. The situation is entirely different in the case at bar.

Here, the lease was for fifteen years, with a renewal option for ten more. Without prolonging this opinion in a lengthy discussion of this contention, it seems sufficient to say that we do not consider the lease to be so unreasonable as to be void. We are not prompted to inquire into the wisdom or motives in contractual or other operations of the municipality in the absence of fraud or some illegal action.

We conclude that the County Executive was the proper official to negotiate and execute the lease for the County, that the lease was not prohibited by the budget provisions of the Charter, and that the term of the lease is reasonable.

*Decree affirmed, with costs to the appellees.*