QUESTION PRESENTED AND CONCLUSION
ISSUE: Does the General Assembly's proposed transfer of funds from the general fund into the capital construction fund for highway construction violates either the Arveschoug-Bird limitation on general fund appropriations or is a "weakening" of "other limits on district revenue, spending, and debt" prohibited by Amendment #1 ("TABOR").
ANSWER: No. The General Assembly's proposed transfer of funds from the general fund into the capital construction fund does not violate the Arveschoug-Bird limitation on general fund appropriations and is not a "weakening" of other limits prohibited by Amendment #1.
ANALYSIS:
The "Arveschoug-Bird limit", enacted in 1991 as House Bill 1262, provides, in relevant part:
 Except as otherwise provided for in subparagraphs (III) and (IV) of this paragraph (a), for the fiscal year 1991-92 and each year thereafter, the total state general fund appropriations shall be limited to such moneys as are necessary for reappraisals of any class or classes of taxable property for tax purposes as required by section 39-1-105.5, C.R.S., plus the lesser of:
 (A) An amount equal to five percent of Colorado personal income; or
 (B) six percent over the total state general fund appropriations for the previous fiscal year.
C.R.S. § 24-75-201.1(1)(A)(II) (Supp. 1994).
The six percent limitation on appropriations does not apply to transfers from the General Fund to the Capital Construction Fund. The Capital Construction Fund statute was amended in 1986 to provide that transfers made from the General Fund to the Capital Construction Fund pursuant to that section "shall not be deemed to be appropriations subject to the limitations of section24-75-201.1." C.R.S. § 24-75-302(2) (1994 Supp.). This provision was effective in 1991, was not changed by the Arveschoug-Bird limit, and is still in effect. Thus, these transfers from the General Fund to the Capital Construction Fund are not subject to an Arveschoug-Bird limit.
Amendment #1 requires "other limits on district revenue, spending, and debt may be weakened only by future voter approval." Colo. Const. art. X, § 20(1). Legislative Legal Services' opinion is that the phrase "other limits" applies to the statutory limit on annual growth of general fund appropriations required by the "Arveschoug-Bird limit" on state appropriations; therefore, for purposes of this memorandum we have assumed that the Arveschoug-Bird limit is an "other limit" under TABOR.
Since a transfer from the General Fund to the Capital Construction Fund is not subject to Arveschoug-Bird such transfer is not a weakening of other limits. The next question is whether the use of capital construction funds on highways is a permitted use of such fund or whether it expands the definition of capital construction.
Capital construction is defined in C.R.S. § 24-75-301(1) (1994 Supp.), in relevant part, as:
 (a) Purchase of land, regardless of the value thereof;
 (b) Purchase, construction, or demolition of buildings or other physical facilities. . . .
The definition clearly includes land to be purchased for highway construction. However, it must be determined whether the phrase "other physical facilities" includes highways.
The General Assembly in the Long Bill has consistently included funds for highway construction under the section designated as Capital Construction Appropriation. The General Assembly has appropriated money from the highway users tax fund and other funds for use on highways in the Capital Construction Appropriation section of the Long Bill. This shows that, regardless of the source of the revenues, the General Assembly recognizes that highways are a type of capital construction.[1]
The commonly understood meaning of capital construction projects demonstrates that the phrase "other physical facilities" can be construed to include highways. Although there are no Colorado cases, language in cases from other states conclusively show that highways are presumed to be capital construction projects. See, Village of Westbury v. Departmentof Transportation, 550 N.Y.S.2d 604, 607 (N Y App. 1989) (Court assumes that highway projects are capital construction projects); Karcher v. Kean, 479 A.2d 403,411 (N.J. 1984) (Involved a challenge to a portion of a capital construction appropriation to the state department of transportation for highway projects); Patterson v.Carey, 395 N.Y.S.2d 411, 415 (N.Y. 1977) (Capital construction consisted of rebuilding six interchanges, widening of a roadway, road lights and bicycle paths); Anne ArundelCounty v. Bowen, 267 A.2d 168, 170 (Md.App. 1970) (County Capital Construction Fund funded a road); State v.Defenbacher, 91 N.E.2d 512, 516 (Ohio 1950) (Turnpikes are capital outlays). In addition, the term "facility" is generally defined as "something that is built or installed to perform some particular function". Black's Law Dictionary 531 (5th ed. 1979). Thus, highways would fall within the common definition of capital construction projects and other facilities. Highways are identical in all material respects to the types of facilities typically included within the term "capital construction," i.e., large, expensive, permanent physical structures built to serve the public.
The statutory scheme for funding capital construction projects as a whole also demonstrates that highways can be funded with capital construction funds. When the capital construction fund was originally created in 1959 (HB-291), the construction and maintenance of highways and the acquisition of highway right-of-way were "excepted" from the benefits of the statute. The statute did not provide that highway projects were not
capital construction projects, but instead the statute excepted highway projects from being subject to all of the provisions of the capital construction fund statute. The Legislature also "excepted" land acquisition authorized by the game, fish, and parks commission and the state park and recreation board. Had the Legislature not considered these highway projects and land acquisitions to be capital construction projects, those projects would not have been required to be "excepted" from the statute.
In 1961, 1963, and 1967, the Legislature excepted the purchase or exchange of land for the CSU campuses in Fort Collins and Fort Lewis from the definition of capital construction. These same years, the Legislature excepted highway construction and land acquisition for highways, game, fish, and parks, and state parks from the procedural budget requirements related to the capital construction fund.
When looking at statutes that address the same or similar subject matter, the statutes should be construed together to give full effect to the legislative purposes of each statute.Subsequent Injury Fund v. Trevethan, 809 P.2d 1098,1099 (Colo.App. 1991). When all of the capital construction budgeting procedure statutes for the capital construction fund and the above exceptions are read together, it made sense to except highways, game, fish and parks, and land board properties from the budgeting procedures because each of those commissions and boards made the budgeting decisions regarding acquisition and relinquishment of property for each of their specialized areas. For example, section 5(7) of the Department of Highways Act of 1952 provided that the Highway Commission had the authority to "promulgate and adopt all State highway and department budgets and State highway programs, including construction priorities and the approval of extensions or abandonments of the State highway system."
The exceptions were repealed and taken out of the Statefunding statutes in 1970. The current capital construction fund definition includes the purchase of land and the construction of "other physical facilities." C.R.S. §24-75-301. The definition of capital construction does not except highways and right-of-way acquisitions.
It is well established that when a statute is amended, it is presumed that the Legislature intended to change the law.Robles v. People, 811 P.2d 804, 806 (Colo. 1991). When the Legislature repeals a statutory provision that prohibits an action, it is presumed that the Legislature intended to permit that action in the future. People v. Smith, 424 P.2d 772,773 (Colo. 1967) ("By repealing the statute which specifically provided that there was no appeal to the district court from a judgment of the county court in cases commenced in municipal court, it is to be presumed that such was done with the legislative intent to permit the appeal of such cases from the county court to the district court"). Therefore, by taking the exceptions out of the capital construction funding statutes, it may be presumed that the Legislature intended that they no longer remain as exceptions.
The capital construction fund statute provides that no appropriation for capital construction shall be made to any agency that has not complied with the requirements of C.R.S. § 24-30-1303.5. Section 1303.5 requires each state agency to annually inventory and report to the Department of Administration real estate held by the agency so that the Department of Administration may annually report and make recommendations to the capital construction committee of the Legislature. Section 1303.5 provides that for purposes of this section, real property does not include CDOT property intended to be used for highways or public lands subject to the jurisdiction of the land board. Again, both the Transportation Commission and the land board are required to maintain their own inventories and have statutory authority to make property decisions for those purposes. See, C.R.S. § 43-1-106(n).
CDOT does provide an inventory to the Department of Administration of all other real property held by it that is not to be used for highways. Part 13 excludes highways from the definition of facility, but only "as used in Part 13." A presumption of purpose must be given to both phrases "for purposes of this section" and "as used in Part 13." BlueRiver Defense Committee v. Silverthorne, 516 P.2d 452,454 (Colo.App. 1973), cert. denied December 17, 1973, Colorado Supreme Court case number SC457. To give effect to those phrases, Part 13 is excluding highways and land board properties from the reporting requirements only. Those exclusions are not found in the capital construction fund statute. Had the Legislature intended to exclude them, it presumably would have done so.
The legislative capital development committee is created by C.R.S. §§ 2-3-1301-1307 (1994 Supp.). The committee makes recommendations to the JBC regarding priorities for capital construction for the state. Section 1307 provides that the committee's powers and duties do not apply to property funded or disposed of by the Transportation Commission out of the state highway fund or the state highway supplementary fund. However, section 1307 does not preclude the Committee from making recommendations for highway capital construction projects that are not funded by the State Highway Fund. In other words, nothing in § 1307 precludes the committee from recommending that money from funds other than the State Highway Fund be spent on highways and bridges.
Consistent with this interpretation, the Legislature has funded roads for other agencies using capital construction funds. In 1994, the Legislature funded out of the capital construction fund site drainage structures and roads for the Zebulon Pike Youth Services Center, and campus road repair and residence hall emergency access roadways for the University of Southern Colorado. In 1993, capital construction funds were used for campus roads for the University of Southern Colorado, and to repair the eroding circumference road for the Red Rocks Community College. In 1991, capital construction funds were given to the Division of Parks and Outdoor Recreation for an access road. In 1990, capital construction funds were used for a safety access road at the University of Southern Colorado. Thus, although capital funds have not been given to CDOT for highways, they have been used to fund roads in the past.
There is not a "weakening" of other limits on district revenue spending or debt which requires voter approval under Amendment #1 if the amounts transferred to the capital construction fund are increased under § 24-75-302, C.R.S. The capital construction fund was to be allocated "such revenues as the general assembly may from time to time determine." The specific amounts contained in the statute are indications of objectives for specific fiscal years. Therefore, an increase in the amount of the transfer to capital construction would be consistent with the intent of Arveschoug-Bird.
This opinion does not address the issue whether the General Assembly, without receiving voter approval, could enact a statute amending the definition of "capital construction" to include projects that were not included in the definition when Amendment #1 was adopted or creating a new transfer from the general fund for a new purpose that would be exempt from Arveschoug-Bird; however, there are clearly limits on the General Assembly's use of the exclusion of the capital construction fund from Arveschoug-Bird. The General Assembly cannot include just anything into capital construction in order to avoid the effects of Arveschoug-Bird. A building is clearly capital construction while personnel services obviously are not. This office would have to review the specific circumstances to determine whether a proposed use of capital construction funds is permissible.
It appears that an expansion of the definition of capital construction could be a weakening of other limits under Amendment #1. Items which are legally within and were legally within the definition of capital construction at the time Arveschoug-Bird was enacted are clearly permissible under the capital construction exclusion and are not a weakening under the Amendment #1 prohibition.
SUMMARY
Highway projects fall within the definition of capital construction projects. Therefore, the transfer of funds from the general fund to the capital construction fund for highway purposes does not violate the Arveschoug-Bird limitation on general fund appropriations and is not a "weakening" of "other limits on district revenue, spendings and debt" prohibited by Amendment #1.
 GALE A. NORTON Attorney General
 MERRILL SHIELDS Deputy Attorney General
 CHARLOTTE ROBINSON First Assistant Attorney General
Amendment # 1 — "other limits" Arveschough-Bird limitations Capital Construction General Fund appropriations Highway construction
[1] Following are examples of appropriations made by the General Assembly in the Capital Construction Appropriation section of the Long Bill for highways.
In 1987, the General Assembly appropriated $2.5 million out of the Highway Users Tax Fund for construction of the Auraria Parkway, which is a state highway. In 1979, $2.0 million was appropriated from the Oil Shale Trust Fund for construction of the Rifle By-pass. In 1979 and 1980, the General Assembly also appropriated funds from the Oil Shale Trust Fund for construction of streets in Rio Blanco County, Meeker, and Silt. Since early 1970, the General Assembly has appropriated HUTF funds to the Division of Parks and Outdoor Recreation for maintenance and repair of roads. All of these appropriations were made in the Capital Construction section of the Long Bill, thus, indicating that the General Assembly considered these highways and road projects to be capital construction projects.