### ROSS C. WYNKOOP *v.* MAYOR AND COUNCIL OF HAGERSTOWN.

[No. 19, April Term, 1930.]

*Decided May 21st, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, and SLOAN, JJ.

*William H. Bovey* and *Leon R. Yourtee,* for the appellant.

*F. Brooke Whiting* and *Augustine 'S. Mason,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a judgment for the defendant on demurrer, entered by the Circuit Court for Allegany County in an action on the case brought by Ross C. Wynkoop against the Mayor and Council of Hagerstown, for injuries inflicted upon him by an intoxicated and irresponsible man armed with a deadly weapon. The basis of the action is the alleged negligence or nonfeasance of the defendant in failing to prevent the person, by whom the plaintiff was injured, from being at large while he was in that condition, in the possession of a loaded pistol.

The declaration contains three counts. The first charges defendant with liability in failing to abate a public nuisance; the second with liability for creating a public nuisance; and the third, with liability for failing to enforce an ordinance prohibiting the discharge of firearms within the corporate limits.

The facts stated in the declaration, or appearing from public statutes and conceded by the demurrer, are these: The City of Hagerstown is a municipal corporation authorized to adopt and enforce ordinances "necessary for the good government of the town" and it is authorized to "prevent, remove and abate all nuisances or obstructions in or upon the streets" of the city. Acts of 1884, ch. 58, sec. 128. Its government is vested in a mayor and council, and the council is required to convene at least once in every month. *Ibid.* The mayor is authorized to appoint a board of street commissioners (*Ibid.;* Acts 1924, ch. 260, sec. 139), and that board is empowered to appoint policemen for the city (*Ibid.,* sec. 143e), to adopt rules and regulations for their control and management, and to dismiss or to discharge them (Acts 1927, ch. 355), but the mayor by and with the consent of the council is given full

control over that board and their orders to it are mandatory (Acts 1924, ch. 260). One member of the police force is to be designated as "chief" and another as "lieutenant."

The city is laid off in streets and alleys, it contains from thirty to thirty-eight thousand inhabitants, is compactly built, and there is much travel by vehicles and pedestrians over its streets and sidewalks.

On December 28th, 1928, one Walter Lutman was residing with his family on Elizabeth Street, in Hagerstown, a few doors from a dwelling occupied by Ross C. Wynkoop, his wife and children. That street is near the center of the city, is heavily traveled at all hours of the day and night, and is compactly built up.

On or about that date Lutman became intoxicated and irresponsible, and while in his home assaulted and beat his wife, and attempted to obtain a revolver which was on the premises with the avowed purpose of further injuring her. His son, Walter, a boy aged about fourteen years, secured the pistol, removed it from the premises, and telephoned the police station for a policeman. In response to that call "Officer Brown," a member of the city police force, came to the Lutman home, and was met in front of it by Mrs. Lutman and her son Walter. They turned the pistol over to him, and requested him to keep it "to avert disorder or injury to persons or property in said Hagerstown," and Mrs. Lutman then entered her home. Upon her entrance her husband again assaulted and beat her. Then "Officer Brown" entered and, in the exercise of a perverted discretion, against the protest of Mrs. Lutman and Walter, he left the revolver, which had been given him for safekeeping, on the premises and within the reach of Lutman, and then prudently retired. Shortly before his departure Mrs. Lutman also left her home, went to the police station, and notified the lieutenant in charge of what had occurred, and of the danger to be anticipated from her husband.

Shortly after the departure of "Officer Brown," Lutman, intoxicated, drinking, and armed with the revolver furnished by "Officer Brown," roamed the streets of Hagerstown, un-

molested and unhindered, and finally entered the premises of the plaintiff Wynkoop and shot him, inflicting upon him painful, dangerous, and disabling wounds.

It is further alleged that there was in force at the time an ordinance making it unlawful to discharge a gun or other firearm within the city limits.

The question in the case is whether upon these facts the appellant is entitled to recover from the Mayor and Council of Hagerstown compensation for the injuries he suffered at the hands of Lutman.

The rule almost universally recognized in common law countries is that there can be no recovery against a municipal corporation for injuries occasioned by its negligence or non-fcasance in the exercise of functions essentially governmental in character. *McQuillen on Mun. Corp.,* sec. 2793; 43 *C. J.* *"Municipal Corporations,"* sec. 1701; 19 *R. C. L. "Municipal Corporations,"* secs. 382, 385, 386. But beginning with *Ballimore v. Marriott,* 9 Md. 160, there has come to be recognized in this State a principle which has been characterized as a departure from that rule. *Consolidated Apartment House Co. v. Baltimore City,* 131 Md. 523; *Hagerstown v. Crowl,* 128 Md. 556; *Hagerstown v. Klotz,* 93 Md. 437; *Cochrane v. Frostburg,* 81 Md. 54; *Taylor v. Cumberland,* 64 Md. 68. That is, that where the municipality is authorized by the Legislature to abate nuisances, the authority carries with it the duty to exercise it, and where it either fails to adopt such ordinances as may be necessary to the reasonable performance of that duty, or to exercise reasonable diligence in enforcing them when adopted, it will be answerable to any private individual injured as a result of its default. All of these cases dealt with some act, omission, or condition which rendered some public highway unsafe, and were predicated upon the proposition that, where a municipality is charged with the duty of maintaining its public highways in a safe condition for public travel, has the requisite power, and possesses or can obtain adequate means to perform that duty, it will be answerable to one injured as a result of its failure to do so. It involves the theory that, in the performance of such a duty

in response to a legislative mandate, it is discharging a municipal as distinguished from a governmental function, and is acting in its corporate capacity and not as the agent of the State. And while the establishment and maintenance of public highways by the State itself is generally regarded as a purely governmental function, they are not always so regarded when committed to a municipal corporation. For in such a case it has been held that, where a municipality is given the privilege of exercising a governmental duty ordinarily performed by the State, the benefit resulting from the grant creates a liability for failure to properly exercise the power. (19 *R. C. L. "Municipal Corporations,"* sec. 392; *Mayor etc. of Lyme Regis v. Henley* [H. L. Error from K. B. 1834], 2 Cl. & Fin. 331, 1 E. R. C. 619, 821; 43 *C. J. "Municipal Corporations,"* sec. 1755), which inures to the benefit of any one specially damaged by such failure. So it has been widely held that municipalities invested with the power and charged with the duty of keeping highways in a safe condition are responsible to persons injured by their failure to perform that duty. And we do not understand that the cases in which the question is considered, of which *Taylor v. Cumberland,* 64 Md. 63, is typical, go any further than that. In all those cases the claim was for injuries occasioned by the unsafe condition of public ways. In *Taylor v. Cumberland, supra,* the city permitted a certain street and its adjacent sidewalks to be covered with ice and snow, and to be used as a slide or course for coasting to the peril of persons lawfully on the street; in *Hagerstown v. Klotz,* 93 Md. 437, the City of Hagerstown failed to enforce an ordinance forbidding bicycling at an immoderate speed on its streets; in *Cochrane v. Frostburg,* 81 Md. 54, the Town of Frostburg permitted cows to run at large unattended upon its streets; in *Hagerstown v. Crowl,* 128 Md. 556, the city authorized the alteration of a building abutting on a public street without requiring reasonable precautions for the protection of travelers passing along the adjacent sidewalk; and in *Baltimore v. Marriott, supra,* the City of Baltimore failed to pre-

vent or remove an accumulation of ice on the footway along Fayette Street in that city.

In holding the municipality liable in each of these cases for injuries to private persons caused by its failure to abate these respective nuisances, the decision was based upon the breach of a corporate or municipal duty imposed by the legislature, but in no case in this State has it been held that a municipality is answerable for injuries caused by its failure to properly discharge a duty imposed upon it as the direct agent of the State. On the contrary, in *Boehm v. Baltimore,* 61 Md. 259, that proposition was definitely repudiated. There the claim was for damages suffered as a result of the revocation of a permit authorizing the plaintiff to carry on the business of removing certain refuse within the city limits. The revocation was under the authority of an ordinance passed in the interest of the public health, and, while the ordinance was not attacked, it was contended that the municipal officials charged with its administration had revoked the permit "without just or legal cause." Dealing with that contention the court said: "If the Commissioner made the request or complaint maliciously, or without just grounds therefor, and the plaintiffs have been damnified thereby, the corporation cannot be made responsible for such misconduct on his part. The power to pass health ordinances like these is derived from what is known as the police power of the State, and it was delegated to be exercised not for the benefit, or in the interest of the city in its corporate capacity, but for the public good. Commissioners and other officials acting under such ordinances and enforcing such regulations, perform duties and occupy positions similar, in legal effect, to that of police officers, and it is well settled that such officers appointed by a city, are not its agents or servants, so as to render it responsible for their unlawful or negligent acts in the discharge of their duties. Accordingly, it has been held that a city is not liable for an assault and battery committed by its police officers, though done in an attempt to enforce an ordinance of the city, nor for an arrest made by them which is illegal for want of a warrant. 2 *Dillon on Mun. Corp.,*

sec. 975." That statement of the law is not only consistent with reason, but the principles which is embodies are almost universally accepted by the courts of this county. *McQuillen on Mun. Corp.*, sec. 2793; 19 *R. C. L.*, page 1108; 43 *C. J. "Municipal Corp.*, sec. 1717.

The protection of the citizen against pestilence, disease, violence, or disorder, is essentially a governmental function to be exercised by the state under its police power, through proper agents. And while in many cases it is difficult on the facts to mark the boundary between acts and duties which are in their essence governmental, and those which are of a corporate or municipal nature, that doubt does not exist in respect to the duties of agencies charged with the administration of the criminal laws, the conservation of the public peace, or the protection of the citizen from violence. But the acts of such agencies done in the performance of duties imposed upon them by law are almost everywhere regarded as governmental in their nature, and for the benefit of the entire public.

Accordingly it may be taken as settled that police officers, exercising directly the police power of the state, are governmental agents, that their duties are of a public nature, and that whether appointed by it or not they are not municipal servants or agents, and that municipalities for which they are appointed will not be responsible for their acts or omissions as police officers (43 *C. J.* 964; *McQuillen on Mun. Corp.*, sec. 2837), whether done or omitted under a public law or a municipal ordinance, 19 *R. C. L.* 1099; *Dillon on Mun. Corp.* (5th Ed .), sec. 1656.

Applying these principles to the facts of this case, in our opinion the appellant failed to state a cause of action in his declaration, and the demurrer to it was properly sustained. He bases his right to recover on several theories, the first of which is that the municipality is responsible for his injuries because it failed to abate a public nuisance. The ground for that contention is that Lutman, in his irresponsible and intoxicated condition armed with a deadly weapon, was a public nuisance, and that the failure of appellee to take him in custody

or disarm him made it possible for him to be at large upon the streets of the city for several hours, and eventually to enter the appellant's dwelling and there assault him.

The facts that Lutman was intoxicated in his own home, and that through the error or negligence of the police officer his revolver was placed within his reach, or that he assaulted and beat his wife, did not in themselves constitute him a nuisance. A nuisance necessarily involves the idea of continuance. *United States v. Cohen,* 268 Fed. 420; *Palestine Bldg. Assn. v. Minor* (Ky.), 86 S. W. 696; *McCalla v. Louisville & N. R. Co.,* 163 Ala. 107; *Southern and North Ala. R. Co. v. McLendon,* 63 Ala. 272. The term itself is not convertible with crime, and it is distinguishable from trespass. 46 *C. J.* 660.

There is nothing in the record to indicate that in being intoxicated in his own dwelling Lutman was guilty of a criminal offence; his ownership and possession of the revolver in his own home was not a crime, nor does it appear that he was guilty of any threatening, boisterous, or disorderly conduct while in the presence of the officer. And while his assault and battery on his wife was a criminal offence, it was a misdemeanor (*Wharton on Crim. Law,* sec. 838), the officer was not authorized to arrest him for it without a warrant unless committed in his presence (*Ibid.,* sec. 136), it is conceded that the officer was not present when the alleged assault was committed, and no warrant for Lutman's arrest had been issued or even prayed. In these facts there is to be found no element of an indictable nuisance. *Wharton Crim. Law,* secs. 1676, 1677. The officer would have been justified in himself swearing out a warrant for Lutman's arrest on the charge of having assaulted and beaten his wife, and he should have done so, if he had reason to believe that as a result of his condition Lutman might become a public menace. But his failure to do so was at most an error of judgment for which the appellee is not responsible.

The second proposition is that the appellee itself created a nuisance when Brown placed the revolver within Lutman's reach. But while Brown was employed and paid by the

municipality, in the discharge of his duties as a police officer he was acting as the agent of the State and not of the city. In this case he had been summoned and went to the Lutman home in his capacity as a police officer to preserve the public peace, and especially to protect the wife and son of Lutman from violence at his hands. And while he was guilty upon the facts stated in appellant's *narr.* of gross negligence in placing a revolver where Lutman could reach it, his default was also an error of judgment for which the appellee is not responsible.

The third reason assigned is that the city is liable because it failed to enforce a city ordinance forbidding the discharge of firearms within the city limits. But such failure amounted at most to negligence or default in the discharge of a governmental function, for which the city is not responsible.

Finally it is said that the appellee is answerable for its failure to prevent Lutman from being at large on the city streets armed with a deadly weapon and in an intoxicated and irresponsible condition. But it does not appear that while on the streets he acted in a disorderly manner, that there was anything to indicate that he was armed, that the police were ever warned that he was on the public streets, or that Mrs. Lutman, when she complained to the lieutenant of police, told him that Lutman was at large on the streets of the city with the revolver in his possession, or even that she knew that he was. For when the officer left him, Lutman was in his own home, and Mrs. Lutman left the home before the officer. But, assuming that the city police department had knowledge of these facts and failed to act on them, its failure was a breach of its duty as a governmental agency, entrusted with the protection of the public security, the prevention of crime, and the suppression of disorder, and not of any duty it owed the city in its municipal or corporate capacity.

For these reasons the action of the trial court in sustaining the demurrer to the appellant's declaration was proper, and the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*