Sarah TAYLOR and Charles Taylor

v.

PRINCE GEORGE'S COUNTY, MARY-
LAND, and Jay Harrington.

Civ. No. 73–1113–HM.

United States District Court,
D. Maryland.

July 1, 1974.

Yale L. Goldberg, and Lawrence A. Hoffman, Silver Spring, Md., for plaintiffs.

Patrick A. O'Doherty, Baltimore, Md., for defendant Harrington.

Joseph S. Casula, and John R. Barr, Upper Marlboro, Md., and Patrick A. O'Doherty, Baltimore, Md., for defendant Prince George's County, Md.

HERBERT F. MURRAY, District Judge.

Charles Taylor, a minor resident of the District of Columbia, brought this action on November 12, 1973 through his mother, Sarah Taylor, to recover damages against Jay Harrington, an officer of the Prince George's County, Maryland Police Department [hereinafter the County] for injuries received during an attack by a police dog under Harrington's supervision.[1] The theoretical bases for this suit are the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Maryland common law governing the torts of negligence and assault and battery. Jurisdiction over the federal cause of action rests on 28 U.S.C. § 1343(4), whereas the state law claims are grounded on either the diverse citizenship of the parties or the doctrine of pendent jurisdiction. The amount of damages sought against each defendant exceeds the statutory prerequisite of $10,000 and venue is properly laid in this district pursuant to 28 U.S.C. § 1391 because the incident triggering this litigation occurred in Maryland. Harrington has answered the complaint with a general denial of the alleged wrongdoing and raised, as an affirmative defense, the doctrine of sovereign immunity which purportedly shields the officers of a Maryland agency from tort liability unless they consent to the suit. The County subsequently moved to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure for failure of the plaintiffs to state a claim upon which relief can be granted. More precisely, it argues that a county is not a "person" within the meaning of 42 U.S.C. § 1983 and is not subject to an action for damages under that section. Second, the County asserts that the officer was acting as an agent of the state of Maryland when he arrested Taylor and that principals alone are liable for the torts of their agents. Finally, it contends that Article 57 of the Annotated Code of Maryland precludes suit against Maryland counties unless they receive notice within one hundred and eighty days of the injury and that this prerequisite is not alleged in the complaint.

In his response to this motion, the plaintiff concedes that the County is not subject to a claim for damages under 42 U.S.C. § 1983 and consents to the dismissal of that cause of action. *See* Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Taylor insists, however, that notice of the incident was received by the Prince George's County Council on July 30, 1973, through a registered letter and has submitted an affidavit from his counsel, a copy of the letter describing the purported assault, and a return receipt to support this assertion. From these documents, it is apparent that Taylor informed the County of his injuries within

---

1. Taylor and two companions were surprised by police officers at the Palmer Park Elementary School after their illegal entry set off a burglar alarm. According to the complaint, Harrington discovered the youths hiding in a lavatory where the arrest was completed and then provoked the dog into a needless attack on the plaintiff.

the meaning of Article 57 of the Annotated Code of Maryland and that this notification is sufficient to avoid dismissal of his common law tort claims on this ground.

Nevertheless, resolution of these preliminary questions underlying the motion to dismiss still leaves the Court with two further issues which require more extended consideration. First, the Court is compelled to raise *sua sponte* the propriety of its subject matter jurisdiction over an allegation of tortious conduct under state law where one of the diverse parties is a municipal entity. Second, there is a dispute between all parties concerning the legal relationship of Harrington to the County and the state of Maryland which is central to the defense that police officers are agents of the state and that the municipalities are, therefore, freed from liability for their employee's misconduct.

## I.

■ Since dismissal of the federal question cause of action against the County eliminates the juridical basis on which the Court could determine the state law claims under the doctrine of pendant jurisdiction, the appropriate inquiry becomes whether a Maryland County is a "citizen" within the meaning of 28 U.S.C. § 1332(a)(1).[2] United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Shuman v. Sherman, 356 F.Supp. 911 (D. Md.1973). At the outset, it is settled law that neither a state nor its instrumentalities are citizens for the purpose of establishing federal diversity jurisdiction. Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894); Fifty Associates v. Prudential Insurance Co. of America, 446 F.2d 1187, 1191 (9th Cir. 1970); Krisel v. Duran, 386 F.2d 179 (2nd Cir. 1967). The corollary to this premise recognizes that a "political subdivision of a State,

unless it is simply the arm or alter ego of the State, is a citizen of the State for diversity purposes" and that the status of a county as an independent legal entity is determined by examining state law. Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890).

■ While decisions subsequent to *Moor* have held without extensive analysis that counties are presumptively citizens of the state of their location Hampton v. City of Chicago, Cook County, Illinois, 484 F.2d 602, 610 (7th Cir. 1973); Pyramid Corp. v. DeSoto County Board of Supervisors, 366 F.Supp. 1299, 1301 (N.D.D.Miss.1973), it is apparent from Justice Marshall's opinion that only an autonomous legal entity enjoys the status of state citizenship under the diversity statute. Moreover, those factors evidencing the independence of Alameda County were carefully defined:

Most notably, under California law a county is given "corporate powers" and is designated a "body corporate and politic." In this capacity, a county may sue and be sued, and, significantly for the purposes of this suit, it is deemed . . . a "local public entity" in contrast to the State and state agencies. In addition . . . the county alone is liable for all judgments against it and is authorized to levy taxes to pay such judgments. A California county may also sell, hold, or otherwise deal in property, and it may contract for the construction and repairs of structures. The counties are also authorized to provide a variety of public services such as water . . ., flood control, rubbish disposal, and harbor and airport facilities. Financially, the counties are empowered to issue general obligation

2. Section 1332(a)(1) provides:
The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds . . . $10,000 . . . and is between—(1) citizens of different States.

bonds payable from county taxes . . . [which] create no obligation on the part of the State. . . . Moor v. County of Alameda, 411 U.S. at 719–20, 93 S.Ct. at 1801.

Another element stressed by Justice Marshall was an opinion of the California Supreme Court which characterized counties as corporate bodies subject to writs of mandamus.

In this state, comparable powers accrued to the County upon its adoption of a charter pursuant to Article XI–A of the Maryland Constitution.[3] According to Article 25A § 1 of the Annotated Code of Maryland which was enacted under this provision, a chartered county may sue and be sued; purchase, hold and sell real, personal and mixed property; and pass all ordinances necessary for the exercise of this delegated authority. Implementing these powers is section 1013 of the Prince George's County Charter:

> The County may be sued in actions sounding in tort in the same manner and to the same extent that any private person may be sued. The County shall carry liability insurance with adequate limits to compensate for injury to persons or damage to property resulting from negligence or other wrongs of its officers, agents and employees.

Maryland counties are also permitted to issue bonds for the maintenance of highways, bridges, drains and streets and for loans of money; to regulate the keeping of livestock; to levy taxes and to provide recreational facilities. Not surprisingly, the General Assembly has described this delegation of exclusive powers as "home rule." *See* Anne Arundel County v. Bowen, 258 Md. 713, 267 A.2d 168 (1970); Montgomery Citizens League v. Greenhalgh, 253 Md. 151, 252 A.2d 242 (1969). Given the

many similarities between the authority conferred on a chartered county in Maryland and the prerogatives of Alameda County constituting autonomous status in *Moor,* it is evident that the defendant County is properly a "citizen" within the meaning of 28 U.S.C. § 1332 under certain circumstances.

## II.

A possible exception to this conclusion is raised by several decisions of the Maryland Court of Appeals which distinguish between the corporate powers of a county and its exercise of a governmental function as an instrumentality of the state. Maryland counties act in a governmental fashion, for example, when they employ, supervise, pay and discharge police officers. This principle was clearly enunciated in Wynkoop v. Hagerstown, 159 Md. 194, 150 A. 447 (1930) where Judge Offutt observed:

> The protection of the citizen . . . is essentially a governmental function to be exercised by the state under its police power through proper agents. . . . Accordingly it may be taken as settled that police officers exercising directly the police power of the state are governmental agents, that their duties are of a public nature, and that, whether appointed by it or not, they are not municipal servants or agents, and that municipalities for which they are appointed will not be responsible for their acts or omissions as police officers, . . . whether done or omitted under a public law or a municipal ordinance. *Id.* at 201, 150 A. at 450.

Continued support for this rule that counties are immunized from tort liability by the agency relationship of their police officers to the state is inferrable from Quecedo v. Montgomery County, 264 Md. 590, 597, 287 A.2d 257 (1972);

3. This provision specifies the procedure for promulgating and approving a county charter. "If a majority of the votes . . . shall be in favor of such adoption, the said charter . . . shall become the law of said City or County, subject only to the Constitution and Public General Laws of this State. . . ." The effect of the queoted passage was the establishment of local self-government which was free from legislative interference.

and Wilkerson v. Baltimore County, 218 Md. 271, 146 A.2d 28 (1958).

■ In the County's view, these cases stand for the proposition that only principals are responsible for the torts of their servants or agents, that the state is the sole principal of these police officers and, consequently, that Maryland counties are excused from any failure to supervise their activities which ultimately cause an injury. The Court believes, however, that the *Wynkoop* holding was based on a theory of governmental immunity rather than a lack of an agency or master-servant relationship between Hagerstown and its police. Judge Offutt's opinion stressed that the duties of a policeman employed by a municipality and the corresponding authority of these political subdivisions to oversee his activities are governmental functions which are protected by the doctrine of sovereign immunity.[4] This conclusion indicates that a Maryland county is merely an instrument or appendage of the state while it exercises certain, delegated police powers and that the state is, in effect, the principal of a policeman regardless of his relationship to the lesser political entity. Furthermore, it necessarily implies that the Maryland Court of Appeals was not concerned with the question of agency.

This analysis is initially confirmed by the comment of Judge Marbury in Cox v. Anne Arundel County, 181 Md. 428, 31 A.2d 179 (1943) that "when a state gives a city or county part of its police power to exercise, the city or county to that extent is the state." *Id.* at 431, 31 A.2d at 181. Also supporting this interpretation of *Wynkoop* is the distinc-

tion drawn by Judge Offutt between police powers committed by the legislature to a municipal corporation which work to the benefit of the municipality justifying the imposition of liability and those which instead are exercised for the public good. 159 Md. at 198–201, 150 A. at 448–50. The difference is usually reflected by a comparison of the authority to maintain public highways and to abate nuisances with the responsibility to administer the criminal laws and to conserve the public peace. *See, e. g.,* Quecedo v. Montgomery County, *supra*; Robinson v. Bd. of County Comm'rs, 262 Md. 342, 278 A.2d 71 (1971); McRobie v. Town of Westernport, 260 Md. 464, 272 A.2d 655 (1971).

■ Additional support for the proposition is found in Godwin v. County Comm'rs, 256 Md. 326, 260 A.2d 295 (1970) where Judge Barnes remarked:

As applied in Maryland, the doctrine of sovereign immunity is not only applicable to the State, itself, as a governmental agency, but is also applicable to its agencies and instrumentalities, including its municipal political sub-divisions, if engaged in a governmental function as an agent of the State, unless the General Assembly either directly or by necessary implication has waived the immunity. . . . The immunity also generally applies to a county of the State when exercising a governmental function as an agent of the State, but not when it is acting in its corporate capacity in maintaining public highways in the county under the management and control of the county. *Id.* at 334, 260 A.2d at 299.

---

4. Although sovereign immunity is not completely synonymous with the term governmental immunity, the distinction is not material to the issue before this Court because Maryland counties are artificial instrumentalities of the state for the purpose of exercising the police power. *Compare* Wynkoop v. Hagerstown, *supra*, with Ramsey v. Prince George's County, 18 Md.App. 385, 308 A.2d 217 (1973). While this judicially created limitation on the independence of the Maryland counties expands the coverage of

governmental immunity, it is insufficient to deprive the Court of subject matter jurisdiction based on 28 U.S.C. § 1332(a)(1). Citizenship depends on the full range of the municipalities' real powers; whereas, governmental immunity was only extended by the Maryland Court of Appeals to one aspect of their authority. Since the County completely controls the duties of its police officers, jurisdiction was properly invoked by the Taylors. Note 8, *infra*.

From this passage, it is apparent that a Maryland county is protected from liability for the tortious acts of its police officers by an extension of the doctrine of sovereign immunity rather than an erroneous application of the principle that only principals are answerable for their agents or sub-agents' behavior. It is the settled rule that agents and principals are both liable for the torts of their sub-agents. Restatement of Agency, Second §§ 5[5] and 362.[6] An agent, however, is only obligated for such misconduct where he has direct control over the sub-agent or employee or permits them to act under circumstances which give rise to an unreasonable risk of physical harm to others. *See generally,* Romero v. Garcia & Diaz, Inc., 286 F.2d 347 (2nd Cir. 1961). If the County has such control in the present case, it is nevertheless as a state instrumentality shielded with the state's sovereign immunity as to the actions of the police officer complained of in this case unless that immunity has been effectively waived.

■■ Since the existence of a sub-agency relationship between the County and Harrington and the scope of the County's authority over its police officers present issues of fact, a motion to dismiss on grounds that there is a lack of agency is premature. The remaining question is whether the General Assembly, either directly or impliedly, waived the shield of sovereign immunity for those Maryland counties adopting home rule charters after the enactment of the enabling legislation. This inquiry is suggested by Judge Barnes' opinion in *Godwin* which reflects persistent dicta from other decisions by the Maryland Court of Appeals. *See, e. g.,* Quecedo. v. Montgomery County, *supra;* Robinson v. Bd. of County Comm'rs, 262 Md. at 345, 278 A.2d at 73; Ramsey v. Prince George's County, 18 Md.App. at 389, 308 A.2d at 220.

At the outset, Article XI–A §§ 1 and 1A of the Maryland Constitution establish procedures for electing charter boards and for the preparation and adoption of county charters. Based on section 2 of this Article,[7] the Maryland Court of Appeals has held that the power of a political subdivision to enact laws depends on the extent to which the General Assembly has delegated the plenary legislative authority. Montgomery Citizens League v. Greenhalgh, 253 Md. at 160–61, 252 A.2d at 246–47. Article 25A § 5(S) of the Maryland Annotated Code empowers chartered counties "to pass all ordinances, resolutions or by-laws, not inconsistent with the provisions of this article or the laws of the State . . . as may be deemed expedient in maintaining the peace, good government, health and welfare of the county."

Construing this statutory language as a general grant of the police power, Chief Judge Hammond observed:

A grant of power to pass laws for the peace, good government, health and welfare of the community is sometimes referred to as 'a general welfare or general grant of power clause,' 6

5. "A subagent is a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible."

6. "The liability of an agent to third persons for the conduct of his servants, subservants and other subagents is the same as that of a master or other principal for the conduct of his servants and other agents."

7. "The General Assembly at its first session after the adoption of this amendment shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter under the provisions of this Article. Such express powers granted to the Counties and the powers heretofore granted to the City of Baltimore, as set forth in Article 4, Section 6, Public Local Laws of Maryland, shall not be enlarged or extended by any charter formed under the provisions of this Article, but such powers may be extended, modified, amended or repealed by the General Assembly."

McQuillin, *Municipal Corporations* (3rd Ed.), § 24.43, and: 'Under it ordinances may be passed which are necessary and beneficial, and they will be adjudged valid by the courts, provided they are reasonable and consonant with the general powers and purposes of the local corporation, and not inconsistent with the United States Constitution, treaties and statutes, and the laws and policy of the state.' It is true . . . that a number of courts have taken the view that a general grant of power to a municipal corporation authorizes only the carrying out of the specific powers delegated to it, but even if it be assumed that such a point of view is sound in the abstract the language of § 5(S) negates the idea that this was its intent, for not only does it empower legislative action designed to carry out, exercise and implement enumerated powers, it goes further to add that power is given 'as well' to ordain for the maintenance of peace, good government, health and welfare of the County. McQuillin notes . . . that 'A general welfare or similar clause, granting extremely broad power to a municipal corporation, is liberally construed to accord a municipality wide discretion in the exercise of the police power . . . . [C]ourts uniformly regard the clause as ample authority for a reasonable exercise . . . of broad and varied municipal activity to protect the health, morals, peace and good order of the community . . . .' The broadest grant of powers customarily is to home rule Counties . . . and cases holding that a delegation was restricted or narrow are concerned almost always with delegations to municipalities that do not enjoy home rule. Montgomery

Citizens League v. Greenhalgh, 253 Md. at 161–62, 252 A.2d at 247.

This lengthy quotation first demonstrates that the County was authorized by the General Assembly under Article 25A § 5(S) to employ police officers and supervise their activities.[8] Second it reveals a broad reservoir of delegated power pertaining to the peace and good government of the community.

Although these conclusions indicate that the enabling legislation brought the police power within the corporate functions of the chartered counties which are not protected by the doctrine of sovereign immunity, the Court prefers to rely on the specific waiver of immunity in § 1013 of the Prince George's County Charter and the clear mandate of the County to pass this provision in support of good government. Furthermore, the acceptance of tort liability for the misconduct of agents and employees who are usually controlled by the County is a reasonable means of achieving a more responsible and effective government. The Court also notes that § 1013 directs the County to obtain insurance coverage for any liability thereunder, and that state monies are not used to compensate the injured. This provision answers a persistent objection to the judicial abrogation of sovereign immunity since expenditure of the funds was authorized by the voters of the County when they ratified the charter.

This construction of Article 25A § 5(S) and § 1013 of the Prince George's County Charter is inferentially confirmed by recent decisions of the Maryland appellate courts. In Quecedo v. Montgomery County, 264 Md. at 594, 287 A.2d at 259, Judge Barnes remarked that "there is little doubt that . . . immunity may be waived by

---

**8.** Articles I and II of Chapter 15 of the Codes of Prince George's County contain a comprehensive set of guidelines for the "conduct, discipline and deportment of the members of the police department." According to section 15-2 of Article I, the functions of the police department include

"the protection of life and property and the preservation of peace and order." Not coincidentally, these purposes mirror Chief Judge Hammond's opinion in *Montgomery Citizens League* and, to some degree, track the language of the delegation in Art. 25A § 5(S).

statute," cited § 1013 and then observed that "[u]nfortunately for the appellant there is no similar type of law applicable to Montgomery County." This observation reflected a comment of Judge Mc-Williams in Robinson v. Bd. of County Comm'rs to the effect that the County relinquished the shield of sovereign immunity upon its adoption of § 1013, but that the waiver would not be applied retrospectively. 262 Md. at 345 and fn. 5, 278 A.2d at 73 and fn. 5. The Maryland Court of Special Appeals has declined to apply the provision retrospectively while admitting by implication its destructive effect on the protection offered by governmental immunity. Ramsey v. Prince George's County, 18 Md. App. at 391, 308 A.2d at 221. It is important to recognize that Judge McWilliams and Judge Scanlan were compelled to address the issue of the retrospective force of § 1013 and to determine that the waiver was limited to a prospective application before they could affirm the dismissal of actions against the County for the torts of its police officers. Absent this finding, the inference is unmistakable that the defense of sovereign or governmental immunity was no longer available to the County.[9]

In this case, the cause of action arose on May 5, 1973, and the date when the waiver became operative, February 8, 1971, has no legal significance for the plaintiff. For this and other reasons previously discussed in this opinion, the Court finds that the complaint states a sufficient common law claim against the County and that the motion to dismiss pursuant to Rule 12(b)(6) must be denied. Insofar as the motion is directed at plaintiffs' claim under the Civil Rights Act of 1871, it is granted and this cause against the County is dismissed.

9. Judge Kaufman of this Court has also considered the effect of § 1013 in Woodard v. Flynn, et al., Civil No. 71–1430K, (Decided Mar. 20, 1973) and has stated that "except for any contrary provisions in Article XII of the Charter, Article X, § 1013 of the Charter, . . . in essence provides for the

abolition of governmental immunity for tort actions. . . . " *Id.* at 9. Since Flynn was acting in the same capacity as defendant Harrington in this case, it is clear that Judge Kaufman's dicta is strong support for rejecting the agency argument offered by the County.