MARY F. BRADSHAW *v.* PRINCE GEORGE'S
COUNTY, MARYLAND ET AL.

[No. 64, September Term, 1978.]

*Decided January 18, 1979.*

*Ronald A. Karp,* with whom were *Donald J. Chaikin, Arthur M. Ahalt* and *Allen M. Hutter* on the brief, for appellant.

*Michael O. Connaughton, Deputy County Attorney,* with whom was *James C. Chapin, County Attorney,* on the brief, for appellees.

MURPHY, C. J., delivered the opinion of the Court.

Whether the provisions of § 1013 of the Prince George's County Charter constitute a waiver of governmental immunity of sworn officers of the County's police department for negligent acts in the scope of their employment, thereby subjecting the County to liability under the doctrine of *respondeat superior,* is the principal issue before us for determination.

At the time of the incident involved in this case § 1013 provided:

> "Governmental Liability. The County may be sued in actions sounding in tort in the same manner and to the same extent that any private person may be sued. The County shall carry liability insurance with adequate limits to compensate for injury to persons or damage to property resulting from negligence and other wrongdoings of its officers, agents, and employees. Nothing herein shall preclude the County from meeting the requirements of this section by a funded self-insurance program."

The relevant facts are these: While on routine patrol, on January 26, 1975, county police officers Maynard and Chertok were summoned to a trash dumpster from which a child, Anthony Bradshaw, was hanging. The child was motionless and had no detectable heartbeat or pulse. It appeared to the officers that the child may have been the victim of a crime. Accordingly, to preserve what they deemed to be the crime scene, they did not immediately remove the child from the dumpster.

The child's mother, Mary Bradshaw, arrived at the scene shortly after the officers. Assisted by one of the officers, Mrs. Bradshaw removed the child from the dumpster. A practical nurse, Patricia Phumphreys, administered pulmonary resuscitation; she said that she revived the child and kept him alive until the ambulance arrived. The ambulance attendant refuted this claim. Anthony was dead on arrival at the hospital.

Mrs. Bradshaw sued the police officers in the Circuit Court for Prince George's County on the ground that they had acted negligently in failing to properly care for the child upon their arrival at the scene. She also sued the County for the alleged tortious activity attributable to its police officers.

The court (Blackwell, J.) granted motions for summary judgment filed by the officers and the County. It concluded that the officers were immune from liability, that § 1013 did not waive their governmental immunity for non-malicious torts, and that consequently their negligent acts were not imputable to the County under the doctrine of *respondeat superior.* Specifically, the court held that (a) the police officers are "public officials ... immune from liability for any non-malicious acts they perform while acting in a discretionary capacity and within the scope of their employment"; (b) the doctrine of *respondeat superior* "will not apply to a fact situation in which an agent who is primarily negligent has been legally determined to be free from liability"; and (c) "the waiver provision contained in § 1013 of the Prince George's County Charter was not designed to strip county officers, agents, and employees, as individuals, of their personal partial immunity from legal redress for

tortious conduct." Holding that § 1013 waived only the County's immunity as to itself and not as to individuals in its employ, the court deemed it unnecessary to determine whether the officers' actions had been negligent as a matter of law. This appeal followed; we granted certiorari prior to decision by the Court of Special Appeals to consider the important issues raised in the case.

The appellant contends that the negligence of the police officers caused the death of her son. She argues that the trial judge ignored the plain meaning of § 1013 of the charter when he concluded that it waived only the County's immunity as to itself and not as to its police officers. Arguing that the trial court's decision denies "the plain import of the charter to make the County liable for the torts of its public officials," appellant relies primarily upon *dicta* in *Robinson v. Board of County Comm'rs,* 262 Md. 342, 278 A. 2d 71 (1971) and *Taylor v. Prince George's County, Maryland,* 377 F. Supp. 1004 (D. Md. 1974).

The County employs a three-step analysis to support its claim of governmental immunity. Reasoning that police officers as "public officials" are immune from tort liability for non-malicious acts, and that § 1013 has not stripped public officials of their immunity, the County concludes that it cannot be liable as a principal on the theory of *respondeat superior* for the tort of a non-liable agent. In addition, the County maintains that § 1013 was void from its inception, since counties had no power in 1970 to waive their governmental immunity.[1]

I

Section 1013 was approved with the enactment of the Prince George's County Charter on November 3, 1970 and became effective on February 8, 1971. Pursuant to Art. XI-A, § 2 of the Constitution of Maryland, the General Assembly in Code, Art. 25A, § 5, enumerated the express powers

1. Maryland Code (1957, 1978 Cum. Supp.) Art. 25A, § 5 (CC), which expressly provides for a chartered county's waiver of its sovereign immunity in tort actions, did not become effective until July 1, 1976.

granted to counties which adopted charters. Although this statute does not expressly mention a power to waive sovereign immunity, we think that the County possessed such a power in 1970 under § 5 (S) of Art. 25A which provides that a chartered county may pass "such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county." [2]

While chartered counties have only those powers expressly delegated and necessarily implied, they possess in § 5 (S) a general grant of power to legislate on matters not specifically enumerated in Article 25A. In upholding a county's power to pass a fair housing law, we said that § 5 (S) "empower[s] legislative action designed to carry out, exercise and implement enumerated powers, [and] it goes further to add that power is given 'as well' to ordain for the maintenance of peace, good government, health and welfare of the County." *Mont. Citizens League v. Greenhalgh,* 253 Md. 151, 161, 252 A. 2d 242, 247 (1969). *See Steimel v. Board,* 278 Md. 1, 8, 357 A. 2d 386 (1976), where we reaffirmed our interpretation of § 5 (S) as a broad grant of power to counties to legislate beyond the powers expressly enumerated in the statute. However, in *Steimel* we found that "the consistent and unchallenged enactment . . . of Sunday closing legislation by the General Assembly on a local-law basis is persuasive

---

2. Section 5 (S), entitled "Amendment of County Charter", grants power to charter counties:

"To pass any ordinance facilitating the amendment of the county charter by vote of the electors of the county and agreeable to Article XIA of the Constitution.

"The foregoing or other enumeration of powers in this article shall not be held to limit the power of the county council, in addition thereto, to pass all ordinances, resolutions or bylaws, not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county.

"Provided, that the powers herein granted shall only be exercised to the extent that the same are not provided for by public general law; provided, however, that no power to legislate shall be given with reference to licensing, regulating, prohibiting or submitting to local option, the manufacture or sale of malt or spirituous liquors."

evidence that it never intended to grant to charter counties the power to legislate in this area." 278 Md. at 10, 357 A. 2d at 391. *See also Quecedo v. Montgomery County,* 264 Md. 590, 594, 287 A. 2d 257 (1972), where we said that a chartered county may waive sovereign immunity by statute, but that merely carrying liability insurance will not effect such waiver.

Construing § 5 (S) as a broad grant of power to the County to legislate for the general welfare of its citizens, and viewing § 1013 of the charter as a reasonable exercise of this power, we find no merit in the County's contention that § 1013 was void from its inception.

## II

Appellant contends that the plain meaning of § 1013 is to create a blanket waiver of all sovereign immunity. The County urges, as the trial court found, that § 1013 is a limited, rather than a blanket waiver of immunity.

In *Godwin v. County Comm'rs,* 256 Md. 326, 334-335, 260 A. 2d 295, 299 (1970), the Court discussed the extent of a county's governmental immunity:

"As applied in Maryland, the doctrine of sovereign immunity is not only applicable to the State, itself, as a governmental agency, but is also applicable to its agencies and instrumentalities, including its municipal political sub-divisions, if engaged in a governmental function as an agent of the State, unless the General Assembly either directly or by necessary implication has waived the immunity.... The immunity also generally applies to a county of the State when exercising a governmental function as an agent of the State, ... *Cox v. Anne Arundel County,* 181 Md. 428, 31 A. 2d 179 (1943). In the *Cox* case, Judge (later Chief Judge) Marbury, for the Court, stated:

'Governments are immune from suit by individual citizens, unless the right is

expressly given. . . . When the State gives a city or couuty part of its police power to exercise, the city or county to that extent is the State.' "

Thus, a municipality or county is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity. To the extent that a county is liable in tort actions, it is also responsible under the doctrine of *respondeat superior* for the tortious conduct of its employees which occurs in the scope of their employment. However, the nature of a county's liability under this doctrine is derivative so that non-liability, immunity, or release of the employee precludes recovery from the principal-county. *See Stokes v. Taxi Operators Ass'n,* 248 Md. 690, 692, 237 A. 2d 762 (1968); *Riegger v. Brewing Company,* 178 Md. 518, 523, 16 A. 2d 99 (1940). *See also Sherby v. Weather Brothers Transfer Company,* 421 F. 2d 1243 (4th Cir. 1970); *Baker v. Gaffney,* 141 F. Supp. 602 (D.D.C. 1956) (applying Maryland law); W. Seavey, *Handbook of the Law of Agency* at 141 (1964).

We have consistently refused to "enlist in the crusade against sovereign immunity and to join the ranks of those courts" which have judicially abrogated the doctrine. *Robinson v. Bd. of County Comm'rs,* 262 Md. 342, 345, 278 A. 2d 71, 73 (1971). *See, e.g., Quecedo, id.; State v. Baltimore County,* 218 Md. 271, 146 A. 2d 28 (1958); *Dunne v. State,* 162 Md. 274, 288-89, 159 A. 751, *appeal dismissed,* 287 U. S. 564 (1932). We have stated that any waiver of immunity must emanate from the legislature, *Quecedo, id.; State v. Baltimore County, id.,* and we are mindful that in construing a statute, we must strive to effectuate the legislative intent. *Weaver v. Prince George's County,* 281 Md. 349, 365, 379 A. 2d 399 (1977).

Without any relevant legislative history to guide us, we look to the language of the charter provision, and "we examine the words used as the primary source for discovering that [legislative] intent." *District Land v. Wash. S.S.C.,* 266 Md. 301, 307, 292 A. 2d 695, 699 (1972). If the words used are clear and unambiguous, our search for the legislative intent

ends. If, however, the words are susceptible of more than one construction, they should be given the meaning intended by the legislature, and courts may resort to well-established rules of statutory construction as aids in determining legislative intent. *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 327 A. 2d 483 (1974).

The first sentence of § 1013 is unambiguous in stating that the county may be sued in tort actions "in the same manner and to the same extent that any private person may be sued." We think this sentence expresses the county's determination to waive the immunity it would otherwise enjoy at common law for its acts performed in a governmental (as opposed to a proprietary) capacity. By providing that its amenability to suit shall be "in the same manner and to the same extent" as that of "any private person," the county has accepted liability for those torts, but only those torts, for which "any private person" would be responsible, either directly or derivatively. In other words, we think that the county intended to waive its own immunity, and to subject itself to liability under the same circumstances as if it were a "private person."

This interpretation is not altered by the second sentence of § 1013, which provides that the County shall carry insurance "to compensate for injury to persons or damage to property resulting from negligence and other wrongdoings of its officers, agents, and employees." Merely providing for insurance will not effect a waiver of a county's immunity, *Quecedo, id.,* nor will it expand a county's waiver to encompass situations where the county as a "private person" would not otherwise, at common law, be liable. *See, e.g., Sherby v. Weather Brothers Transfer Company,* 421 F. 2d 1243 (4th Cir. 1970), where the court applied Maryland law in holding that a minor child cannot recover from his father's employer for injuries caused by the father's negligence in the scope of employment. A contrary holding would permit the child to accomplish indirectly that which he could not do directly, because of the doctrine of parental immunity. *See also Riegger v. Brewing Company,* 178 Md. 518, 16 A. 2d 99 (1940), where our predecessors held that a wife had no right

of action against her husband's employer for injuries sustained as a result of the husband's negligence while acting in the scope of his employment. To allow an action based upon the doctrine of *respondeat superior* would result in holding the employer liable "notwithstanding her [plaintiff's] inability to have legal redress against the person causing her injuries." *Id.* at 523, 16 A. 2d at 101. A similar result was reached in *Stokes v. Taxi Operators Assn.,* 248 Md. 690, 237 A. 2d 762 (1968), where we held that a wife, a paying passenger in a taxicab operated by her husband, could not recover from his employer for the injuries she sustained as a result of her husband's negligent operation of the cab.

In concluding that § 1013 was not intended to subject the County to any greater liability than it would have as a "private person," we note that the charter provision is in contravention of the common law of this State, and as such, should be strictly construed. *See Dunne v. State, id.* at 288-89. It is presumed that the legislative body did not intend to make any alteration of the common law other than what is plainly stated. *M. & C.C. v. Balto. Gas Co.,* 232 Md. 123, 135, 192 A. 2d 87 (1963); *Lutz v. State,* 167 Md. 12, 172 A. 354 (1934); *Stoll v. Baltimore,* 163 Md. 282, 293, 162 A. 267 (1932). Thus, in order for § 1013 to bar the County's governmental immunity defense in this case, there must have been actionable tortious conduct on the part of the police officers for which liability can be imputed to the County.[3]

## III

In deciding whether there was actionable tortious conduct on the part of the police officers, we must address the doctrine of public official immunity as applied to the facts of this case. We have held that a police officer is a "public official" when acting within the scope of his law enforcement function. *Robinson v. Bd. of County Comm'rs,* 262 Md. 342,

---

3. Nothing in Taylor v. Prince George's County, Maryland, 377 F. Supp. 1004 (D. Md. 1974), suggests a contrary interpretation. That case discussed sovereign immunity as it relates to the question of an agency relationship between the state, the county, and the police officers. *Taylor* did not address the issues of public official immunity or of the liability of the police officers for alleged negligence and assault and battery.

278 A. 2d 71 (1971); *State v. Baltimore County,* 218 Md. 271, 146 A. 2d 28 (1958); *Harris v. Baltimore,* 151 Md. 11, 133 A. 888 (1926). As a "public official," a police officer is protected by a qualified immunity against civil liability for non-malicious acts performed within the scope of his authority. *Robinson, id.; Harris, id.; Cocking v. Wade,* 87 Md. 529, 40 A. 104 (1898); *Arrington v. Moore,* 31 Md. App. 448, 358 A. 2d 909 (1976); *Ramsey v. Prince George's Co.,* 18 Md. App. 385, 308 A. 2d 217 (1973).

It is clear from these authorities that a police officer, to enjoy immunity, must act without malice and within the scope of his law enforcement function. In the instant case, the allegedly tortious conduct of the police officers occurred while they were on patrol, when they responded to the scene of the accident, and when they attempted to preserve what they deemed to be evidence of a possible crime. Appellant does not argue that these discretionary actions fell outside the scope of the officers' law enforcement function. Nor does appellant allege that the conduct of the officers was malicious; rather, she bases her cause of action only on negligence. Thus, if the police officers retained their "public official" immunity after the enactment of § 1013, then, on these facts, the appellant's cause of action is faulty as a matter of law, both as to the officers, *Robinson, id.,* and as to the County under *respondeat superior. See, e.g., Sherby v. Weather Bros., id.; Riegger v. Brewing Co., id.*

As we have interpreted § 1013, the County's waiver of its immunity from tort liability is not a blanket waiver, but it extends only to those torts for which "any private person" may be held responsible, either directly or derivatively. If, in waiving its own immunity, the County purported to waive the immunity enjoyed by its "public officials" for non-malicious conduct performed within the scope of their authority, then the police officers would become liable in tort to the same extent as "any private person." They could therefore be sued for non-malicious conduct, and the County could be responsible as a principal-employer for the negligence of its police-employees. Although § 1013 does not expressly waive the immunity enjoyed by public officials, we must examine

that immunity to determine if it exists independent of the County's (now waived) governmental immunity.

In *Wynkoop v. Hagerstown,* 159 Md. 194, 200, 150 A. 447, 449-50 (1930), our predecessors observed that "police officers ... are not its [a city's] agents or servants, so as to render it responsible for their unlawful or negligent acts in the discharge of their duties." *Wynkoop* held that police officers, "exercising directly the police power of the state, are governmental agents, ... they are not municipal servants or agents." *Id.* at 201, 150 A. at 450. *Accord, Quecedo, id.; State v. Baltimore, id.* This analysis would seem to indicate that the state is, in effect, the principal of the police officers, and that the officer is protected from liability for his non-malicious tortious conduct by an extension of the state's sovereign immunity, and not by the umbrella of the county's governmental immunity.[4] In discussing the immunity of public officials, we have recognized that "[t]he immunity of such officers, where it exists, rests upon wholly different grounds from that of the State." *Eliason v. Funk,* 233 Md. 351, 196 A. 2d 887 (1964) (A motion raising preliminary objection pursuant to Rule 323 b on the grounds of governmental immunity is restricted to actions against governmental agencies, *eo nomine,* and does not apply to actions against public officers.) *Accord, Robinson, id.* The basis of "public official" immunity is that a public purpose is served by protecting officials when they act in an exercise of their discretion. *See Duncan v. Koustenis,* 260 Md. 98, 271 A. 2d 547 (1970); *Arrington v. Moore,* 31 Md. App. 448, 358 A. 2d 909 (1976). Particularly in the case of law enforcement officers, the exercise of discretion may call for "decisiveness and precipitous action" in response to crises. *Arrington, id.* at 464.

---

4. Dicta in Taylor v. Prince George's County, Maryland, 377 F. Supp. 1004, 1009 (D. Md. 1974), suggests that police officers may, if sufficiently under the control of the county, become county sub-agents. But if their "public official" immunity has not been waived, the police, as we have seen, are shielded from liability for mere negligence during the performance of their official duties. Thus, neither the state nor the county would be liable for the tort of a non-liable sub-agent.

We conclude that the police officers' "public official" immunity rests upon different grounds from that of the County and the State, and that the County has not, in § 1013, waived its public officials' immunity or agreed to assume responsibility for the non-malicious torts of its police officers.[5] Thus, "public officials" of the County are still entitled to their immunity by reason of their status. Since police officers, as public officials, are not liable individually, the County cannot be held liable under the doctrine of *respondeat superior.* Our holding does not ignore the plain import of § 1013, as appellant suggests, because the County would remain liable for the negligent acts of those officers, agents, and employees who do not enjoy "public official" immunity.[6]

*Judgment affirmed; costs to be paid by the appellant.*

5. In judicially abolishing governmental immunity, the California Supreme Court was careful to note that its decision did not affect "the settled rules of immunity of government officials for acts within the scope of their authority." Muskopf v. Corning Hospital Dist., 55 Cal. 2d 211, 220, 11 Cal. Rptr. 89, 359 P. 2d 457 (1961). Government officials retain their personal immunity for discretionary acts within the scope of their authority. Lipman v. Brisbane Elementary Sch. Dist., 55 Cal. 2d 224, 11 Cal. Rptr. 97, 359 P. 2d 465 (1961).

6. A November, 1976 amendment to § 1013 provides that "nothing herein shall be deemed to be a waiver of any charitable, governmental, or sovereign immunity which any officer, agent, or employee shall otherwise have. . . ."