560 A.2d 48

**Andrew C. BOYER, et al.**

v.

**STATE of Maryland, et al.**

**No. 1784, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

July 3, 1989.

Certiorari Granted Nov. 28, 1989.

Christopher K. Mangold (Koonz, McKenney & Johnson, on the brief), Landover, for appellants.

Steven E. Leder (George G. Tankard, Lord & Whip, Baltimore, and Millicent Edwards Gordon, Asst. Atty. Gen., Pikesville, on the brief), for appellees, State of Md. and Robert C. Titus.

John L. Ridge, Jr., and Montedonico & Mason, Chartered, on the brief, Rockville, for appellee, County Comm'rs of Charles County.

Argued before GILBERT, C.J., and GARRITY and BLOOM, JJ.

GILBERT, Chief Judge.

Maryland State Trooper Robert C. Titus approached a car driven by Richard Milton Farrar while it was stopped at a red light on southbound Route 301. Titus, suspecting that Farrar was driving while intoxicated, instructed him to pull off the road. Farrar, however, ignored that request and sped away. Joined by deputies from the Charles County Sheriff's Department, as well as by additional state troopers, Titus pursued Farrar at high rates of speed for a distance of seven miles along Route 301. The pursuit ended when Farrar crashed into an automobile occupied by Mary and Joseph Boyer. The Boyers died as a result of the injuries sustained in the collision.

Andrew, David, and Alexander Boyer, the surviving sons of Joseph and Mary Boyer, filed an eleven count complaint in the Circuit Court for Prince George's County against Trooper Titus, the State of Maryland, the Charles County Sheriff's Department, the County Commissioners of Charles County, and Richard Farrar. The complaint alleged that all of the defendants were negligent in that they participated in the high speed pursuit. The complaint additionally stated that the State of Maryland and the County Commissioner of Charles County, as well as the Charles County Sheriff's Department, negligently hired and trained the employees who were involved in the chase. Besides compensatory damages, punitive damages were also sought from each of the defendants.

The case was transferred to the Circuit Court for Charles County, which granted summary judgment in favor of all of the defendants except Richard Farrar. The hearing judge, acting pursuant to Md. Rule 2-602(b), determined that there was no just reason for delay in bringing an appeal and certified the summary judgment orders as final judgments. In this Court, Andrew Boyer and his brothers contend that the judge erred in granting the summary judgment motions. We have an entirely different point of view.

The Court of Appeals, in *Cocking v. Wade*, 87 Md. 529, 40 A. 104 (1898), declared that it is important to shield a public officer from liability where the officer's alleged negligence arose from the performance of his job in a manner which involved judgment and discretion. Keeping that principle intact, the Court, since *Cocking*, has held that a governmental representative will be relieved of liability for his non-malicious tortious acts where:

> "(1) he is a *public official* rather than a mere *government employee or agent;* and (2) his tortious conduct occurred while he was performing *discretionary*, as opposed to *ministerial*, acts in furtherance of his official duties." (Emphasis in original.)

*Ashburn v. Anne Arundel County*, 306 Md. 617, 510 A.2d 1078 (1986) (quoting *James v. Prince George's County*, 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980)).

█ Officer Titus, in the case *sub judice*, was a "public official" acting while within the scope of his law enforcement function. That a police officer is a public official is no longer open to challenge. *Bradshaw v. Prince George's County*, 284 Md. 294, 302, 396 A.2d 255 (1979); *Robinson v. Bd. of County Comm'rs*, 262 Md. 342, 346–47, 278 A.2d 71 (1971); *State v. Baltimore County*, 218 Md. 271, 146 A.2d 28 (1958); *Harris v. Baltimore*, 151 Md. 11, 133 A. 888 (1926).

█ Nowhere in the complaint is it alleged that Titus acted with malice. Thus, in deciding whether Titus is immune from suit, we narrow our inquiry to whether he acted in a discretionary or ministerial capacity. The ministerial-discretionary distinction was addressed in *James v. Prince George's County*, 288 Md. at 326, 327, 418 A.2d 1173, quoting *Doeg v. Cook*, 126 Cal. 213, 58 P. 707, 708 (1899). There, the Court stated:

> "Where [a public officer's] duty is absolute, certain, and imperative, involving merely the execution of a set task— in other words, is simply ministerial—he is liable in damages to anyone specially injured either by his omitting to

perform the task, or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, to be exerted or withheld according to his own judgment as to what is necessary and proper, he is not liable to any private persons for a neglect to exercise those powers, nor for the consequences of a lawful exercise of them, where no corruption or malice can be imputed, and he keeps within the scope of his authority."

The same point was also discussed in *Schneider v. Hawkins*, 179 Md. 21, 25, 16 A.2d 861 (1940). The Court opined:

"The term 'discretion' denotes freedom to act according to one's judgment in the absence of a hard and fast rule. When applied to public officials, 'discretion' is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience, and uncontrolled by the judgment or conscience of others."

Maryland Transportation Code Annotated § 11–118(1) defines "emergency vehicle" to mean "any of the following vehicles that are designated by the Administration as entitled to the exemption and privileges set forth in the Maryland Vehicle Law for emergency vehicles: (1) Vehicles of federal, state, or local law enforcement agencies...."

The Court of Appeals in *James v. Prince George's County*, 288 Md. at 327, 418 A.2d 1173, said that "ordinarily the operation of a vehicle by any one, including a 'public official' is a mere ministerial act." The Court pointed out that the driving of an emergency vehicle involves but a "minimal degree ... [of] the exercise of discretion with regard to the State's sovereignty." The *James* Court held that the operation of such an emergency vehicle "is not ordinarily a discretionary act for which immunity will shield the driver from liability for negligence." *Id.* at 328, 418 A.2d 1173.

Were this case simply a matter of a high speed emergency vehicle's involvement in a collision, the issue would be

readily resolved on the strength of *James v. Prince George's County, supra.*

Driving an emergency vehicle, however, is vastly different from the making of a decision to apprehend a suspect. *Ashburn,* 306 Md. at 624, 510 A.2d 1078. "When [police officers] are within the scope of their law enforcement function, they are clearly acting in a discretionary capacity so long as the action taken is without malice." *Robinson,* 262 Md. at 347, 278 A.2d 71. Moreover, the key word in the *James* quote is "ordinarily," thus denoting exceptions. The case *sub judice* is an exception to the *James* emergency vehicle ministerial act rule in that it is not the "ordinary" situation. Officer Titus, the State of Maryland, and Charles County are, in the final analysis, being sued because of Titus's decision to apprehend Farrar. Since Titus was acting in the capacity of a public official, without malice, in an exercise of discretion, he is immune from suit. The County and the State are also without liability because the alleged tortious conduct on which the suit against them is based results from actions of an individual who is personally immune. *Bradshaw,* 284 Md. at 305, 396 A.2d 255.

The public expects police officers to protect it from reckless and drunken drivers. Police are literally "the front line" in the national battle to rid the highways of those menaces. When performing the job of a law enforcement officer, the exercise of discretion may call for decisiveness and action in response to crises. *Bradshaw,* 284 Md. at 304, 396 A.2d 255. A police officer's presently difficult job would be nearly impossible if every act committed in a non-malicious, discretionary manner could become the basis of a lawsuit. Were that to occur, we would in effect be placing handcuffs on the officers, not the culprits. We decline to restrict the officer's exercise of discretion.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.